# UNITED STATES *v.* DALM

No. 88–1951.   Argued January 10, 1990—Decided March 20, 1990

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, O'CONNOR, and SCALIA, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post,* p. 612.

*Christine Desan-Husson* argued the cause *pro hac vice* for the United States. On the briefs were *Solicitor General Starr, Assistant Attorney General Peterson, Deputy Solicitor General Wallace, Alan I. Horowitz, Gilbert S. Rothenberg,* and *Charles Bricken.*

*Robert B. Pierce* argued the cause for respondent. With him on the brief was *Paul T. Mengel.*

JUSTICE KENNEDY delivered the opinion of the Court.

Single transactions, it is well known, may be susceptible to different, and inconsistent, theories of taxation. In the case before us, the taxpayer treated moneys derived from her deceased employer's estate as a gift and paid gift tax on the transfer. Some years later, the Government contended that the money the taxpayer had received from the transaction was income. The taxpayer disagreed, and the Government's assertion of an income tax deficiency was the subject of proceedings in the United States Tax Court. The question presented is whether, the statute of limitations long since having run, the doctrine of equitable recoupment supports a separate suit for refund of the earlier paid gift tax after the taxpayer settled the Tax Court deficiency proceeding and agreed to pay income tax on the transaction. We hold that it does not.

I

The taxpayer, Frances Dalm, is the respondent here. Dalm was appointed administratrix of the estate of Harold Schrier in May 1975, at the request of Schrier's surviving brother, Clarence. It appears Dalm had been the decedent's loyal secretary for many years and that Clarence wanted her to take charge of the affairs of the estate and receive some of the moneys that otherwise would belong to him.

Dalm received fees from the estate, approved by the probate court, of $30,000 in 1976 and $7,000 in 1977. She also received from Clarence two payments, $180,000 in 1976 and $133,813 in 1977. Clarence and his wife filed a gift tax return in December 1976 reporting the $180,000 payment as a gift to Dalm, and in that same month Dalm paid the gift tax of $18,675. The Internal Revenue Service (IRS) later assessed an additional $1,587 in penalties and interest with respect to the transfer. The Schriers paid the penalties and interest in 1977, and were reimbursed by Dalm. But no gift tax return was filed with respect to the 1977 payment of $133,813.

After auditing Dalm's 1976 and 1977 income tax returns, the IRS determined that the payments from Clarence represented additional fees for Dalm's services as administratix of the estate and should have been reported as income. The IRS asserted deficiencies in her income tax of $91,471 in 1976, and $70,639 in 1977, along with additions to the taxes under § 6653(a) of the Internal Revenue Code of 1954 (IRC), 26 U. S. C. § 6653(a) (1982 ed.).[1]

Dalm petitioned the Tax Court for a redetermination of the asserted deficiencies, as was her right under § 6213(a). In her petition, she argued that the 1976 and 1977 payments from Clarence were gifts to carry out the wish of the decedent that she share in the estate. After two days of trial, Dalm and the IRS settled the case, with the parties agreeing to a stipulated decision that respondent owed income tax deficiencies of $10,416 for 1976 and $70,639 for 1977. No claim for a credit or recoupment of the gift tax paid by Dalm was raised in the Tax Court proceedings, although there is some dispute whether the gift tax was one of the factors considered in arriving at the terms of the settlement. See n. 2, *infra*.

Immediately after agreeing to the settlement, Dalm filed an administrative claim for refund of the $20,262 in gift tax, interest, and penalties paid with respect to the $180,000

---

[1] Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954 (26 U. S. C.), as amended.

transfer in 1976. The claim was filed in November 1984, even though the IRC required Dalm to file any claim for a refund of the gift tax by December 1979. See § 6511(a). When the IRS failed to act upon her claim within six months, Dalm filed suit in the United States District Court for the Western District of Michigan, seeking what in her complaint she denominated a refund of "overpaid gift tax." Her complaint alleged that the District Court had jurisdiction under 28 U. S. C. § 1346(a)(1) (1982 ed.).

The Government moved to dismiss the suit for lack of jurisdiction and for summary judgment, arguing that the suit was untimely under the applicable statute of limitations. The District Court granted the Government's motions, rejecting Dalm's contention that her suit was timely under the doctrine of equitable recoupment as set forth in our opinion in *Bull* v. *United States*, 295 U. S. 247 (1935), a case we shall discuss. The court held that equitable recoupment did not authorize it to exercise jurisdiction over "an independent lawsuit, such as this suit, . . . maintained for a refund for a year in which the statute of limitations has expired." App. to Pet. for Cert. 19a.

On appeal, the Court of Appeals for the Sixth Circuit reversed. 867 F. 2d 305 (1989). The court found Dalm's claim satisfied all of the requirements for equitable recoupment expressed in our cases. It rejected the District Court's characterization of Dalm's action as an independent lawsuit barred by the statute of limitations, reasoning that she could maintain an otherwise barred action for refund of gift tax because the Government had made a timely claim of a deficiency in her income tax based upon an inconsistent legal theory. *Id.*, at 311–312 (citing *Kolom* v. *United States*, 791 F. 2d 762 (CA9 1986)).[2]

---

[2] In its opinion granting summary judgment to the Government, the District Court had suggested that an alternative ground for decision was that the only plausible explanation for the allocation of the agreed income tax liability between 1976 and 1977 in the Tax Court settlement was

Because the approach taken by the Sixth and Ninth Circuits is in conflict with that adopted by Seventh Circuit, see *O'Brien* v. *United States*, 766 F. 2d 1038 (1985), we granted certiorari, 493 U. S. 807 (1989), and now reverse.

II

The ultimate question in the case is whether the District Court had jurisdiction over Dalm's suit seeking a refund of the gift tax, interest, and penalties paid on the 1976 transfer. We hold that it did not.

A

In her complaint, Dalm invoked 28 U. S. C. § 1346(a)(1) (1982 ed.), under which a district court has jurisdiction over a "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." Despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions. The first is § 7422(a), which, tracking the language of § 1346(a)(1), limits a taxpayer's right to bring a refund suit by providing that

> "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary,

that the allocation reflected the previously paid gift tax on the 1976 transfer. The Sixth Circuit held that the District Court had erred in granting summary judgment on this issue, giving the taxpayer an opportunity to show the parties' intent in effecting the settlement. Accordingly, it remanded the case for further proceedings on this issue. 867 F. 2d, at 312.

according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

Second, § 6511(a) provides that if a taxpayer is required to file a return with respect to a tax, such as the gift tax, the taxpayer must file any claim for refund within three years from the time the return was filed or two years from the time the tax was paid, whichever period expires later. Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court. See *United States* v. *Kales*, 314 U. S. 186, 193 (1941).

There is no doubt that Dalm failed to comply with these statutory requirements. The Schriers filed their gift tax return and Dalm paid the gift tax on the 1976 transfer in December 1976. She paid the penalties and interest on that tax in March 1977. Dalm did not file her claim for refund of the gift tax until November 1984, long after the limitations period expired. Under the plain language of §§ 6511(a) and 7422(a), the District Court was barred from entertaining her suit for a refund of the tax.

## B

The Court of Appeals did not contest this analysis; indeed, it recognized that "[t]here is no statutory basis for permitting the recovery of a tax overpayment after the statute of limitations has expired." 867 F. 2d, at 308. Despite the lack of a statutory basis for recovery, the court concluded that the doctrine of equitable recoupment permits Dalm to maintain an action to recover the overpaid gift tax. We disagree.

The doctrine of equitable recoupment was first addressed by us in our opinion in *Bull* v. *United States, supra.* There, the dispute centered on whether partnership distributions re-

ceived by a decedent's estate after his death were subject to estate tax or income tax. After an audit, the executor of the estate included the sums in the estate tax return and paid the estate tax in 1920 and 1921. In 1925, the Commissioner of Internal Revenue notified the estate of a deficiency in the estate's income tax for the 1920 tax year, contending that the same distributions upon which estate tax had been paid should have been treated as income. The Commissioner, however, did not give credit for the estate tax earlier paid on the value of the distributions.

That same year, the estate petitioned to the Board of Tax Appeals for a redetermination of the deficiency.[3] After the Board sustained the Commissioner's deficiency determination, the estate paid the additional income tax and filed a claim for refund of the income tax paid. The Commissioner rejected the claim, and, in September 1930, the executor sued in the Court of Claims for a refund of the income tax.[4]

---

[3] The Board of Tax Appeals, the forerunner to the United States Tax Court, was established by the Revenue Act of 1924 as "an independent agency in the executive branch of the Government." Revenue Act of 1924, Pub. L. 176, § 900(k), 43 Stat. 338. Under the Act, a taxpayer was permitted to challenge an income tax deficiency asserted by the Commissioner, prior to paying the deficiency, by way of a petition to the Board. See id., §§ 274, 900; Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 721 (1929).

[4] Before the enactment of the Revenue Act of 1926, there was no direct review of Board of Tax Appeals decisions. As a result, a taxpayer who lost in proceedings before the Board was permitted to sue in district court or the Court of Claims for a refund after payment of the deficiency. In effect, the refund suit, although nominally a separate proceeding, was a mechanism by which taxpayers could obtain review of Board decisions. See Old Colony Trust Co., supra, at 721–722; Ferguson, Jurisdictional Problems in Federal Tax Controversies, 48 Iowa L. Rev. 312, 350–351 (1963). The Revenue Act of 1926 put an end to this circuitous process. First, it provided for direct judicial review of Board decisions in the courts of appeals. Revenue Act of 1926, ch. 27, § 1001(a), 44 Stat. 109. Second, the Act provided that, once a taxpayer had filed a timely petition with the Board, the taxpayer generally could not institute a new suit in another court for refund of the same tax. Id., § 284(d), 44 Stat. 67. Under our

In his petition to the Court of Claims, the executor argued (1) that the amount taxed was not income, so that the estate was entitled to a refund of the entire amount of income tax paid; and (2) alternatively, if the amount taxed was income, the Government should credit against the income tax due the overpayment of estate tax, plus interest, attributable to the inclusion of the amount in the taxable estate. The Court of Claims rejected both arguments.

We reversed, holding that the executor was entitled to a credit against the income tax deficiency in the amount of the overpayment of estate tax, with interest. 295 U. S., at 263. We began by acknowledging that the executor had not filed a claim for refund of the estate tax within the limitations period, and that any action for refund of the tax was now barred. *Id.*, at 259, 260–261. "If nothing further had occurred Congressional action would have been the sole avenue of redress." *Id.*, at 261.

What did occur, however, was that after the limitations period on the estate tax had run, the Government assessed a deficiency in the estate's income tax based upon the same taxable event, and the deficiency became the subject of litigation between the estate and the Government. We reasoned that a tax assessment is in essence an assertion by the sovereign that the taxpayer owes a debt to it; but that, because "taxes are the life-blood of government," it was necessary for the tax assessed to be collected prior to adjudication of whether the assessment was erroneous or unlawful. As a result,

> "the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant,

decision in *Old Colony Trust Co., supra*, at 725–728, the Act did not apply to cases where, as in *Bull*, the taxpayer filed his or her petition with the Board and the Board had not issued a decision prior to the enactment of the Act in 1926. See generally Andrews, Modern-Day Equitable Recoupment and the "Two Tax Effect:" Avoidance of the Statutes of Limitation in Federal Tax Controversies, 28 Ariz. L. Rev. 595, 599, n. 20 (1986).

> is shifted to the taxpayer. . . . But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign." *Id.*, at 260.

Under our reasoning, the proceeding between the executor and the Government was in substance an attempt by the Government to recover a debt from the estate. The debt was the income tax that was owed, even though in fact it already had been paid. Had the Government followed the "usual procedure" of recovering debts by instituting an action at law for the income tax owed, the executor would have been able to defend against the suit by "demanding recoupment of the amount mistakenly collected as estate tax and wrongfully retained." *Id.*, at 261 (citing *United States* v. *State Bank*, 96 U. S. 30 (1878)).

> "If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations had barred an independent suit against the Government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." 295 U. S., at 262.

We found it immaterial that, rather than the Government having to sue to collect the income tax, the executor was required first to pay it and then seek a refund. "This procedural requirement does not obliterate his substantial right to rely on his cross-demand for credit of the amount which if the United States had sued him for income tax he could have recouped against his liability on that score." *Id.*, at 263.[5]

---

[5] Since *Bull*, we have emphasized that a claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories. See *Rothensies* v. *Electric*

Dalm contends that the only distinction between her case and *Bull* is the "meaningless procedural distinction" that her claim of equitable recoupment is raised in a separate suit for refund of gift tax, after she had litigated the income tax deficiency, while in *Bull* the claim of equitable recoupment of the estate tax was litigated as part of a suit for refund of that tax alleged to be inconsistent with the estate tax. A distinction that has jurisdiction as its central concept is not meaningless. In *Bull*, the executor sought equitable recoupment of the estate tax in an action for refund of income tax, over which it was undisputed that the Court of Claims had jurisdiction. See n. 4, *supra*. All that was at issue was whether the Court of Claims, in the interests of equity, could adjust the income tax owed to the Government to take account of an estate tax paid in error but which the executor could not recover in a separate refund action. Here, Dalm does not seek to invoke equitable recoupment in determining her income tax liability; she has already litigated that liability without raising a claim of equitable recoupment and is foreclosed from relitigating it now. See § 6512(a). She seeks to invoke equitable recoupment only in a separate action for refund of gift tax, an action for which there is no statutory authorization by reason of the bar of the limitations statute.

It is instructive to consider what the facts in *Bull* would have to be if Dalm's contention is correct that her case is identical to *Bull* in all material respects. The executor in *Bull* would have litigated the income tax liability, without raising a claim of equitable recoupment, in the Board of Tax Appeals and/or in the Court of Claims, with the Government winning in each forum. Then, having exhausted his avenues

_____

*Storage Battery Co.*, 329 U. S. 296, 299–300 (1946); cf. *Stone* v. *White*, 301 U. S. 532 (1937) (permitting the Government to invoke equitable recoupment as a defense against a claim for refund of income tax paid by a trust where there was a complete identity of interest between the trust and the beneficiary who had received the income, and a claim against the beneficiary for the income tax was then barred).

of litigating the income tax liability and paid the tax, the executor would have filed a claim for refund of the estate tax with the Commissioner, asserting equitable recoupment as the basis for the refund, with the Commissioner rejecting it as untimely. At that point, the executor would have brought suit for refund of the estate tax in the Court of Claims after the statute of limitations had run. Had the case come to us with those facts, we would have faced the issue presented here: whether the court in which the taxpayer was seeking a refund was barred from entertaining the suit. We can say with assurance that we were not presented with this issue in *Bull* and did not consider it. Even had the issue been raised, *Bull* itself suggests that we would have rejected Dalm's argument out of hand. See *Bull*, 295 U. S., at 259 ("The fact that the petitioner relied on the Commissioner's assessment for estate tax, and believed the inconsistent claim of deficiency of income tax was of no force, cannot avail to toll the statute of limitations, which forbade the bringing of any action in 1930 for refund of estate tax payments made in 1921").

The only other decision in which we have upheld a claim or defense premised upon the doctrine of equitable recoupment is consistent with our analysis today. In *Stone* v. *White*, 301 U. S. 532 (1937), a trust had paid the income it received from the corpus to its sole beneficiary and also paid the tax due on the income. After the statute of limitations governing the Government's right to collect the income tax from the beneficiary had run, the trust filed a timely suit seeking a refund of the income tax paid on the theory that the beneficiary, not the trust, was liable for the tax. We held that, given the identity of interest between the beneficiary and the trust, the Government could invoke equitable recoupment to assert its now-barred claim against the beneficiary as a defense to the trust's timely claim for a refund. *Id.*, at 537–539. As in *Bull*, there was no dispute that the court in which we allowed the doctrine of equitable recoupment to be raised had juris-

diction over the underlying action: the trust's timely action for a refund of income tax.

In sum, our decisions in *Bull* and *Stone* stand only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction. In both cases, there was no question but that the courts in which the refund actions were brought had jurisdiction. To date, we have not allowed equitable recoupment to be the sole basis for jurisdiction.

## C

Under settled principles of sovereign immunity, "the United States, as sovereign, 'is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States* v. *Testan*, 424 U. S. 392, 399 (1976) (quoting *United States* v. *Sherwood*, 312 U. S. 584, 586 (1941)). A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms. See *United States* v. *Mottaz*, 476 U. S. 834, 841 (1986); *Block* v. *North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U. S. 273, 287 (1983). "[A]lthough we should not construe such a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended.'" *Ibid.* (quoting *United States* v. *Kubrick*, 444 U. S. 111, 117–118 (1979)); *Library of Congress* v. *Shaw*, 478 U. S. 310, 318 (1986); *United States* v. *King*, 395 U. S. 1, 4 (1969) (waivers of sovereign immunity by Congress "cannot be implied but must be unequivocally expressed").

As we have determined, our previous equitable recoupment cases have not suspended rules of jurisdiction and so have not deviated from these principles. We likewise refuse Dalm's invitation to do so here. She seeks a refund not of income tax but of gift tax on which the return was filed and

the tax paid in December 1976. For the District Court to have jurisdiction over her suit for refund, Dalm was required to file a claim for refund of the tax within three years of the time the gift tax return was filed or two years of the time the tax was paid, whichever period expires later. See §§ 6511 (a), 7422(a).[6] There is no question but that she failed to do so.[7] Having failed to comply with the statutory require-

[6] JUSTICE STEVENS calls it a fiction to cast Dalm's action as a suit for refund. He creates instead a distinction between refund actions and suits for funds wrongfully retained. See post, at 620–622. Neither the IRC nor our authorities support the distinction. Section 6511(a) applies to claims for refund of a tax "overpayment." The commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all. Even in Bull, the case upon which the dissent relies to assert that retention of the gift tax is unjust or fraudulent, we described the inconsistent tax as being an "overpayment." See, e. g., 295 U. S., at 258, 262, 263. The word encompasses "erroneously," "illegally," or "wrongfully" collected taxes, as those terms are used in 28 U. S. C. § 1346(a)(1) (1982 ed.) and § 7422(a).

There is a further statutory point. By its express language, § 7422(a) conditions a district court's authority to hear a refund suit, regardless of whether the tax is alleged to have been erroneously, illegally, or wrongfully collected, upon the filing of a claim for refund. If, as even JUSTICE STEVENS appears to concede, see post, at 620, the term "overpayment" as used in § 6511(a) encompasses erroneous or illegal collection, there is no reason to conclude that it does not also encompass wrongful collection.

As a final matter, we note that both Dalm and the Court of Appeals must have been misled by what JUSTICE STEVENS now thinks a fiction. Dalm's complaint sought a "refund" of "overpaid gift taxes"; and the Court of Appeals treated the claim as one for "recovery of a tax overpayment." See Complaint, 2–3; 867 F. 2d 305, 308 (CA6 1989). We have no doubt that these characterizations were correct.

[7] In a final attempt to bring her refund suit within the statute, Dalm contends that her suit was timely. She argues that the gift tax was not paid for the purposes of § 6511(a) until 1984, when it was determined that she owed income tax on the same transaction under an inconsistent theory. So, she asserts, her cause of action for refund of gift tax did not arise until that time. We disagree. The most sensible interpretation of § 6511(a) is that a tax is paid when the taxpayer tenders payment of the tax to the IRS, not when the taxpayer discovers that the payment was erroneous. The very purpose of statutes of limitations in the tax context is to bar the asser-

ments for seeking a refund, she asks us to go beyond the authority Congress has given us in permitting suits against the Government. If any principle is central to our understanding of sovereign immunity, it is that the power to consent to such suits is reserved to Congress.

Our conclusion is reinforced by the fact that Congress has legislated a set of exceptions to the limitations period prescribed by §§ 7422 and 6511(a). In 1938, Congress adopted what are known as the mitigation provisions, now codified at §§ 1311–1314. These statutes, in specified circumstances, permit a taxpayer who has been required to pay inconsistent taxes to seek a refund of a tax the recovery of which is otherwise barred by §§ 7422(a) and 6511(a). It is undisputed that Dalm's action does not come within these provisions; were we to allow her to maintain a suit for refund on the basis of equitable recoupment, we would be doing little more than overriding Congress' judgment as to when equity requires that there be an exception to the limitations bar.

Our holding today does not leave taxpayers in Dalm's position powerless to invoke the doctrine of equitable recoupment. Both the Secretary, at the administrative level, see Rev. Rul. 71–56, 1971–1 Cum. Bull. 404 (revoking Rev. Rul. 55–226, 1955–1 Cum. Bull. 469), and a court which has jurisdiction over a timely suit for refund may consider an equitable recoupment claim for an earlier tax paid under an inconsistent theory on the same transaction.

## III

The Court of Appeals reasoned that recoupment should be permitted because it effected, with respect to a single transaction, the recovery of a tax based upon a theory inconsistent

---

tion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious. That a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a ground upon which to claim a refund, does not operate to lift the statutory bar.

with the theory upon which a later tax was paid. But to permit an independent action for recoupment because there is but one transaction is to mistake the threshold requirement for its rationale. It is true that our precedents allowing recoupment pertain to cases where a single transaction is subjected to inconsistent taxation, but the reason the statute of limitations is not a bar in those cases is that the court has uncontested jurisdiction to adjudicate one of the taxes in question. In such cases, a court has the equitable power to examine and consider the entire transaction:

> "The essence of the doctrine of recoupment is stated in the *Bull* case: 'recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' 295 U. S. 247, 262. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296, 299 (1946).

Here the Government asserted an income tax deficiency on a theory inconsistent with the theory upon which Dalm relied in paying gift tax. She chose to litigate the deficiency in the Tax Court, where she did not attempt to raise a recoupment claim.[8] She cannot choose this avenue to adjudicate the income tax consequences of the transaction, and then seek to reopen the matter and override the statute of limitations for the sole purpose of seeking recoupment. The controlling jurisdictional statutes do not permit her to do so.

The judgment of the Court of Appeals is therefore reversed.

*It is so ordered.*

---

[8] We have no occasion to pass upon the question whether Dalm could have raised a recoupment claim in the Tax Court.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

This is not a decision that will be much celebrated or often cited. Few cases are affected, and not a single brief *amicus curiae* was filed. The Court reserves in a footnote an issue that would render obsolete its holding. The case casts a shadow on the Executive—and on this Court—but otherwise has no apparent importance.

Indeed, the Court's opinion is remarkable not at all for what it says but rather for what it leaves unsaid. The majority's parsing of sovereign immunity and jurisdiction masks what is the ultimate question before us: whether a statute of limitations otherwise barring a refund of federal income tax is tolled by Government conduct that this Court has censured as "immoral" and tantamount to "a fraud on the taxpayer's rights." See *Bull* v. *United States*, 295 U. S. 247, 261 (1935). The Court today offers a jurisdictional apology when it could—and should—follow the just rule of the *Bull* case.

## I

This case is remarkably similar to its 55-year-old precursor. The *Bull* case involved an attempt by the Government to collect income tax on partnership distributions received by the estate of a deceased partner. The Commissioner of Internal Revenue had already collected an estate tax on the distributions on the assumption that they constituted part of the estate corpus. The Commissioner contended, first, that the same transactions could constitute both corpus and income and thus be subject to both an estate tax and an income tax, and, second, that, in any event, the statute of limitations barred a recovery of the estate tax. This Court rejected the Commissioner's first argument, and characterized as follows his claim that the Government could retain the estate tax while collecting a second tax on the same transaction pursuant to an inconsistent theory:

> "The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of its agent. *United States* v. *State Bank*, 96 U. S. 30. While here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights." 295 U. S., at 261.

This case involves an equally unjust retention of a previously paid tax. The Government has collected an income tax on a transfer of $180,000 to respondent while retaining the gift tax previously paid on the same transfer. The Court's decision assumes, as the summary judgment record requires, that when the Government compromised its claim for an income tax deficiency, it allowed respondent no credit for the gift tax that had previously been paid. Thus, the critical fact that made the Government's position in *Bull* immoral is present here: a single taxable event has been subjected to two taxes on mutually inconsistent theories.[1]

## II

Even with the parallel between *Bull* and this case clearly in mind, most readers of the majority's opinion must wonder how this case ever came before our Court, and why the majority must recite so much law to decide it. According to the majority, respondent chose to litigate in the Tax Court

---

[1] Arguably the Government's position in this case is even more outrageous than the position it took in *Bull* because its income tax assessment in that case was perfectly sound. In this case, however, its income tax claim was based on the remarkable theory that payments aggregating $313,813 constituted compensation for respondent's services as administratrix of her former employer's estate when the probate court had approved a total of $37,000 as compensation for those services. I do not, however, place any reliance on this aspect of the case, just as the Court correctly abstains from suggesting that the harshness of its holding is mitigated by the unresolved factual dispute about whether the Tax Court settlement took into account the prior gift tax payment. See *ante*, at 600–601, n. 2.

the deficiency assessed against her, and, having made this choice, cannot "then seek to reopen the matter and override the statute of limitations for the sole purpose of seeking recoupment." *Ante*, at 611. This may seem fair enough, but also plain enough: A legal claim that might have been settled in an earlier proceeding is usually barred by rules of claim preclusion. If the claim is not barred by the settlement agreement in this case, then surely the Government can—without any help from this Court—avoid such problems in the future by drafting its settlement agreements more carefully. There is accordingly no justification for the Court's exercise of certiorari jurisdiction in this case, a discretionary act which has done nothing more useful than deprive the twice-taxed respondent *in this case* of a remedy for a wrong done by the Government.[2]

Two facts explain why the Government does not rely on principles of claim preclusion as a defense in this case. The first is this: It is undisputed by the parties to this case that the Tax Court lacked jurisdiction to consider recoupment of

---

[2] The majority states that certiorari was granted in this case to resolve a conflict among the Courts of Appeals. If there were such a conflict it would not be of sufficient importance to merit our attention, but in fact no relevant conflict exists. The majority correctly observes that the decision of the Court of Appeals for the Sixth Circuit in this case agrees with that of the Court of Appeals for the Ninth Circuit in *Kolom* v. *United States*, 791 F. 2d 762 (1986). The Court erroneously suggests that these decisions are contrary to *O'Brien* v. *United States*, 766 F. 2d 1038 (CA7 1985). *O'Brien* was not a case in which a taxpayer sought to litigate an equitable recoupment claim in District Court after litigating in the Tax Court the assessment that generated the recoupment claim. In *O'Brien*, the beneficiary of an estate sought to litigate a recoupment claim after a deficiency was assessed against, and litigated in the Tax Court by, the estate itself. The Court of Appeals for the Seventh Circuit held that only the estate, not the beneficiary, could assert any available recoupment claim. *Id.*, at 1050–1051. I do not believe the Court of Appeals for the Seventh Circuit spoke to the question at issue here, see *id.*, at 1050, n. 15, but to the extent it did so, its remarks were obviously dicta. The Court thus today endorses a rule that no Court of Appeals has ever adopted.

the gift tax payment against the income tax deficiency.[3]  According to the Government, respondent cannot, and for that reason did not, raise her equitable recoupment claim in the Tax Court: "respondent's choice of the Tax Court forum precluded her from claiming equitable recoupment against the income tax deficiency."  Reply Brief for United States 6. The Government acknowledges that respondent may have had a sound claim for recoupment, but insists that to pursue this claim she should have "paid the 1976 and 1977 income tax deficiencies and then brought a timely refund suit in district court or the Claims Court."  *Id.*, at 3–4.

The second fact is this: an affluent taxpayer, but not a less fortunate one, can pay a deficiency assessment and file suit for a refund.  It is undisputed that if respondent had the means to do so, she could have recovered the gift tax that had been paid in 1976 by a refund action filed after she received the notice of income tax deficiency in 1983, even though the statute of limitations had long since run.  One might infer

---

[3] See Rev. Rul. 71–56, 1971–1 Cum. Bull. 404, 405 ("[T]he Tax Court lacks jurisdiction to consider a plea of equitable recoupment"); see also *Estate of Schneider* v. *Commissioner*, 93 T. C. 568 (1989).  In *Rothensies* v. *Electric Storage Battery Co.*, 329 U. S. 296, 303 (1946), we cited *Commissioner* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418 (1943), for the proposition that the Tax Court has no jurisdiction to consider recoupment.  A careful reading of the *Gooch Milling* opinion, and of the relevant statute, however, will show that it actually considered only the question of recoupment based on an overpayment in a year other than the year in dispute.  I therefore commend the Court for its careful reservation of this issue, see *ante*, at 611, n. 8.  It is nevertheless appropriate to assume for purposes of deciding the jurisdictional issue in this case that respondent's counsel correctly believed that no recoupment could be had in the Tax Court.

Of course, if this Court were eventually to decide the reserved issue by holding that the Tax Court has jurisdiction to hear an equitable recoupment claim, today's decision would become a complete dead letter.  No taxpayer would have any reason to litigate the deficiency and the recoupment issues separately, and in any event a judgment upon the former would bar a subsequent suit upon the latter under the doctrine of res judicata.

from the posture of this case—as respondent's counsel represented to the Court—that respondent's limited means foreclosed this avenue of relief for her. She therefore challenged the deficiency in the Tax Court.

These two facts explain what the majority does not: why we are not addressing a simple case of res judicata. It is clear that the basis for respondent's equitable recoupment claim did not exist until it was determined that the payment made in 1976 was taxable as income. Thus, respondent could apparently obtain a forum to hear her equitable recoupment claim only by seeking a refund of the previously paid gift tax—an action which all agree was barred by limitations when respondent received the notice of deficiency in 1983.

When that determination was made—that is to say, when the income tax case was settled—respondent promptly asserted her recoupment claim in the only forum available. Indeed, she filed her claim for a gift tax refund even *before* the settlement agreement was consummated. In view of the fact that the character of the 1976 transaction remained in dispute until the claim was filed, none of the policy reasons that normally support the application of a statute of limitations is implicated by this case.

### III

The Court nevertheless denies respondent the relief devised by the *Bull* Court. Ignoring both the policies underlying the statute of limitations and the principles of just conduct underlying *Bull*, the Court confronts respondent with the majestic voices of "jurisdiction" and "sovereign immunity"—voices that seem to have a haunting charm for this Court's current majority.

The Court that decided the *Bull* case reasoned not in obeisance to these siren-like voices but rather under the reliable guidance of a bright star in our jurisprudence: the presumption that for every right there should be a remedy. See *Marbury* v. *Madison*, 1 Cranch 137, 162–163 (1803). With-

out any sacrifice of technical propriety, the *Bull* Court could have found that the lapse of time had divested the Court of Claims of jurisdiction to allow the taxpayer credit for the previously paid estate tax. It easily avoided that unjust result, however, by relying on the special features of the tax collection procedures that impose burdens on the taxpayer unlike those imposed on ordinary litigants. The net effect of its analysis was to hold that in a refund action based on the multiple and inconsistent taxation of a single transaction, the taxpayer is to be treated as though she were the defendant even though she is actually the plaintiff.[4]

I would adopt the same course in this case. By initiating a proceeding to recover income tax based on the 1976 payment, the Government waived the time bar that would otherwise have precluded a claim for refund of the gift tax. Had re-

---

[4] "The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution. But these reversals of the normal process of collecting a claim cannot obscure the fact that after all what is being accomplished is the recovery of a just debt owed the sovereign. If that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrongful. Restitution is owed the taxpayer. Nevertheless he may be without a remedy. But we think this is not true here.

"In a proceeding for the collection of estate tax, the United States through a palpable mistake took more than it was entitled to. Retention of the money was against morality and conscience. But claim for refund or credit was not presented or action instituted for restitution within the period fixed by the statute of limitations. If nothing further had occurred Congressional action would have been the sole avenue of redress.

. . . . .

"To the objection that the sovereign is not liable to respond to the petitioner the answer is that it has given him a right of credit or refund, which though he could not assert it in an action brought by him in 1930, had accrued and was available to him since it was actionable and not barred in 1925 when the Government proceeded against him for the collection of income tax.

"The pleading was sufficient to put in issue the right to recoupment." *Bull* v. *United States*, 295 U. S. 247, 260–261, 263 (1935).

spondent paid the deficiency and asserted the claim for a gift tax refund as a second count in one action, even this Court would agree that the claim was timely. If we adopt the Court's reasoning in *Bull*, it is proper to treat the second count of the refund action as timely even when the income tax issues are litigated before the Tax Court, because the deficiency assessment was sufficient to put in issue the right to recoupment and to justify treating the taxpayer as a defendant, rather than a plaintiff. If it was not too late for the Government to litigate the tax consequences of the 1976 payment, it should not be too late for the taxpayer to do so. "A different result here [is] a reproach to our jurisprudence." *United States* v. *State Bank*, 96 U. S. 30, 36 (1878).

## IV

It may reasonably be said that the disposition in *Bull* involved an unusually flexible treatment of legal categories. The rights of a plaintiff are construed by reference to the status of a defendant so as to permit, in effect, the equitable tolling of a limitations period. A doctrinal innovation that appears imaginative may, however, be nothing more than the necessary expression of an exception to a generally appropriate definition. This particular exception deserves the status of a legal rule by virtue of our decision in *Bull*. There is no reason to retreat from the direction of that precedent today.

There is, moreover, nothing especially sober or unflinching about the majority's disposition of this case. Quite the contrary is true. The majority's approach depends upon showing that this Court is constrained by tightly drawn jurisdictional boundaries, but, as the majority concedes, the relevant jurisdictional statute speaks in "spacious terms." *Ante,* at 601. Indeed, the statute confers jurisdiction not only over any "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," but also over any such action to recover "any sum alleged to have been excessive or in

any manner wrongfully collected under the internal revenue laws." 28 U. S. C. § 1346(a)(1) (1982 ed.).[5]

The majority correctly recognizes that this blanket waiver of immunity can be converted into a jurisdictional straitjacket only by recourse to limitations spelled out elsewhere. The majority would find these limitations in § 7422 and § 6511(a) of the Internal Revenue Code. The first of these provisions stipulates that no tax refund suit "shall be maintained . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U. S. C. § 7422(a) (1982 ed.).[6] The second provision establishes a statute of limitations applicable to actions for refund of taxes paid by filing a return or by means of a stamp. 26 U. S. C. § 6511(a) (1982 ed.).[7] It is the latter of these two provisions which gives the majority the shackles it seeks: the statute of limitations in § 6511(a) is a provision of law that, under § 7422(a), restricts the capacity of taxpayers

---

[5] The provision reads:

"The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

[6] The majority quotes this provision in its entirety. See *ante*, at 601–602.

[7] The provision reads:

"Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid."

to maintain suits. Denominating respondent's suit an action for refund of overpaid gift tax, the majority declares there can be "no doubt" that the combined operation of § 7422(a) and § 6511(a) strips the federal courts of the jurisdiction otherwise accorded by 28 U. S. C. § 1346(a)(1) (1982 ed.) over the recoupment suit.

I have no doubt that § 6511 prescribes the statute of limitations applicable to actions for the refund of overpaid gift tax, and that, if this were such an action, the section would at least support the majority's argument. This suit is not, however, technically a suit for the refund of overpaid gift tax within the meaning of § 6511(a). The gravamen of respondent's claim is not that the gift tax was overpaid, but that it was unjustly retained. According to the *Bull* Court, "[w]hile here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights." 295 U. S., at 261. In my opinion, a sum fraudulently retained under the internal revenue laws is an amount included within § 1346(a)(1)'s provision for recovery of "any sum . . . in any manner wrongfully collected under the internal-revenue laws." The jurisdictional grant expressly distinguishes such wrongfully collected sums from those sums which are simply "excessive," and from taxes "erroneously or illegally assessed or collected." These latter phrases would appear to cover actions for refund of an overpaid gift tax, but the payment fraudulently retained in this case is better characterized as a "sum . . . wrongfully collected." Likewise, § 6511(a) by its express terms applies only to actions for refund of an "overpayment of any tax" paid by means of a return or a stamp. It is odd to speak of the overpayment of a fraud, and one is not ordinarily required to file a return in order to be defrauded—even when the sovereign is the malefactor. I conclude that, technically speaking, this action is one for the recoupment of tax wrongfully collected because fraudulently retained, and not for the refund of tax overpaid. The plain language of § 1346(a)(1) accords

jurisdiction over respondent's suit, and the terms of § 6511(a) do not divest it.[8] The majority's affection for plain language seems to end where its devotion to sovereign immunity begins.[9]

---

[8] The income tax deficiency was assessed against respondent in June 1983. In November 1984, respondent filed an administrative claim seeking relief from the inconsistent tax treatment of the transaction. This suit followed in September 1985. The suit would thus be timely even if the 2-year limitations period from § 6511(a) were borrowed and applied to claims arising out of a "wrongful collection" resulting from inconsistent taxation.

[9] Respondent's complaint identifies this action as one for "recovery of Internal Revenue taxes and interest erroneously collected from" respondent, and alleges that "overpaid gift taxes" are due and owing to respondent. Respondent filed with the Internal Revenue Service claims for refund of overpaid gift tax. I do not, however, understand the majority to rely upon these details of the pleadings. Nor could it reasonably do so. As the Government's handling of this case makes clear, it understood the basis for respondent's cause of action. That basis is, moreover, evident from the face of the complaint, which alleges that:

"4. It is inequitable for Defendant to collect taxes on the same fund on the mutually exclusive theories of said amount of money being both income and a gift.

"5. Accordingly, timely Claims for Refund was [sic] filed on November 1, 1984 . . . .

.        .        .        .        .

"7. The action of the Defendant, through its agents, in assessing and collecting the amounts referred to in Paragraph 2 [alleging the payment of gift taxes in 1976 and 1977] hereof was improper, illegal and erroneous."

Nowhere does the complaint allege that the gift tax was collected as the result of erroneous calculations, mistaken facts, or misinterpreted provisions of law. The sole reason given for recognizing the gift tax as an "overpayment" is that its retention would be "inequitable."

If indeed the premise for the majority's holding is an especially strict rule of pleading, then the majority's holding becomes not simply trivial but absurd. The pleading rule imposed certainly does not have "jurisdiction as its central concept," and thus would even by the majority's logic be a "'meaningless procedural distinction.'" See ante, at 606. Cf. United States v. Kales, 314 U. S. 186, 194 (1941) ("This Court . . . has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regu-

The majority is able to complete its argument only by inventing a small, but blatant, fiction: that respondent is bringing a suit for the refund of overpaid gift tax within the meaning of 26 U. S. C. § 6511(a) (1982 ed.). This minor fiction is then conscripted by the majority's strategy to serve the vainest of all legal fictions, the doctrine of sovereign immunity. The doctrine has its origin in the ancient myth that the "[K]ing can do no wrong." See 1 W. Blackstone, Commentaries *238. Whatever might be said in favor of this polite falsehood in English law, the doctrine is an anomalous import within our own. See *Nevada* v. *Hall*, 440 U. S. 410, 414–415 (1979); see also *Will* v. *Michigan Dept. of State Police*, 491 U. S. 58, 87 (1989) (STEVENS, J., dissenting). Its persistence cannot be denied but ought not to be celebrated. Nor should its fictive origin ever be forgotten. There is no cause to expand the doctrine, and we do better to interpret § 1346(a)(1) by the light of equity and with due regard for the practicalities of revenue collection discussed in *Bull*.

To be useful, legal concepts must accommodate most disputes without the dissonance accompanying blended categories, but must also permit such flexibility when judgment demands it. It is not surprising that our concepts should be stressed when the Government taxes a citizen twice upon inconsistent theories and then subjects the citizen to a choice among competing fora, each of which provides only half a remedy. It is equally unsurprising, and in fact encouraging, that such problems occur so rarely that Congress has not made any explicit provision for them.[10]

---

lations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period").

[10] The majority supposes that its "conclusion is reinforced by the fact that Congress has legislated a set of exceptions to the limitations period" which "permit a taxpayer who has been required to pay inconsistent taxes to seek a refund of a tax the recovery of which is otherwise barred." See *ante*, at 610. The exceptions were enacted two years after *Bull* was decided. It is undisputed that these exceptions do not apply in this case. Unlike the

What is surprising is that this Court believes the equitable decision of the Court of Appeals in need of correction. The Court today has taken discretionary jurisdiction over a case of no broad import, and has undone equity by rendering an opinion true to neither the spirit nor the letter of American law. The Court takes its stand upon the grave declaration that a "distinction that has jurisdiction as its central concept is not meaningless." *Ante*, at 606. I am not sure what this solemn truism means, but I do know that it does not decide this case.

Because I am unable to discover any just reason for distinguishing this case from *Bull*, I respectfully dissent.

---

majority, I am not persuaded that because Congress took special steps to ensure that twice-taxed citizens were treated equitably under some circumstances, Congress must have intended to gut judicially created doctrines which ensured equitable treatment for twice-taxed citizens under other circumstances. The contrary inference seems more plausible. See Andrews, Modern-Day Equitable Recoupment and the "Two Tax Effect:" Avoidance of the Statutes of Limitation in Federal Tax Controversies, 28 Ariz. L. Rev. 595, 619–623 (1986).