Estate of William F. HARRAH, Deceased; Louis Mead Dixon, Executor; William F. Harrah Marital Trust; Louis Mead Dixon; Lloyd T. Dyer; Joseph W. McMullen, Trustees, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 94–15880.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 1995.

Decided Nov. 3, 1995.

As Amended March 1, 1996.

Frank P. Cihlar, Tax Division, United States Department of Justice, Washington, D.C., for defendant-appellant.

Russell D. Uzes, Brobeck, Phleger & Harrison, San Francisco, California, for plaintiffs-appellees.

Before: SNEED, PREGERSON, and FERNANDEZ, Circuit Judges.

SNEED, Circuit Judge:

The Estate of William F. Harrah (Estate) seeks to recover an alleged overpayment of income taxes in the taxable years of 1983 and 1984. The William F. Harrah Marital Trust (Trust) [1] also seeks to recover a related overpayment for the 1984 taxable year. The difficulty each confronts is that the reopening of the relevant years is barred by the statute of limitations. *See* 26 U.S.C. § 6511(a).

---

1. The Trust was established by William F. Harrah's will to be funded from the Harrah Estate. For purposes of our decision, the two entities' legal positions are identical.

To remove this bar the Estate relied upon the mitigation provisions of the Internal Revenue Code, 26 U.S.C. §§ 1311–1314, and the doctrine of equitable recoupment. The district court held that the mitigation provisions did not apply to these claims, but that equitable recoupment did. Accordingly, it recomputed the income taxes owed for the years in question and found overpayments by the Estate and Trust with respect to the relevant taxable years.

The Estate and Trust concede that the district court's judgment with respect to the inapplicability of the mitigation provisions of the Code set forth in 26 U.S.C. §§ 1311–1314 is correct. We reverse the district court's application of the doctrine of equitable recoupment and hold that the claims of the Estate and Trust with respect to the relevant taxable years are barred by the statute of limitations.

## I.

Not infrequently, certain events in a fairly distant taxable year, and the tax decisions made with respect thereto, control the tax consequences of much more recent years. As in life, in tax law yesterday's decisions often control today's consequences. So it was in this case.

William F. Harrah died on June 30, 1978. His estate included 5,930,301 shares of common stock of Harrah's Inc. (Harrah's), which, in the Estate's 1980 estate tax return, were valued at $13.325 per share, or $79,021,261. In 1980, Harrah's was merged with Holiday Inns, Inc. (Holiday Inns), as a result of which the Estate received cash in the amount of $60,262,886, a promissory note executed by Holiday Inns in the amount of $45,000,000, and convertible subordinated debentures of Holiday Inns in the face amount of $105,262,800.

The computation of the amount of taxable gain realized by the Estate obviously depended on the amount at which the promisso-

ry note and convertible subordinated debentures of Holiday Inns were valued. The Estate in its 1980 income tax return valued the promissory note at its face value, $45,000,000, and discounted the convertible subordinated debentures at 20%, to arrive at a figure of $84,210,240. A taxable gain of $110,451,865 was reported in the Estate's 1980 income tax return.[2]

In 1982, the Estate converted the debentures it received in the merger with Holiday Inns into 5,263,140 shares of Holiday Inns stock. Inasmuch as the basis of the debentures according to the Estate was $84,210,240, the exchange resulted in a basis of $16 for each Holiday Inns share.

Perhaps this conversion of the debentures received by the Estate in its merger with Holiday Inns either aroused or confirmed the unease of the Internal Revenue Service (IRS) with the Estate's valuation of the Harrah's stock in its 1979 estate tax return. In any event, in 1982, the IRS sent the Estate a deficiency notice with respect to its 1979 estate tax return, which rested on the claim that the Harrah's stock should have been valued at $34.05 per share rather than $13.325.

Not only would an increase in the value of the Harrah's shares increase the estate tax owed by the Estate, it also would alter the tax consequences of the 1980 merger with Holiday Inns. In turn, the valuation of the debentures would affect the tax consequences of both the 1980 merger and any disposition of the Holiday Inns stock derived from the conversion of the debentures.

This latter consequence became important because in 1983 the Estate sold 679,400 shares of the Holiday Inns stock for $25,159,789, and distributed 1,101,447 shares to the Trust. Both transactions required that the basis of the Holiday Inns stock be determined, which might be greater than $16 a share. Similar uncertainty existed with re-

2. The figures presented more simply are as follows:

Amount Realized:

| | |
|---|---|
| Cash | $ 60,262,886 |
| Promissory Note | $ 45,000,000 |
| Convertible Debentures | $ 84,210,240 |
| Total | $189,473,126 |
| Basis of Harrah's Stock (Estate Tax Valuation) | $ 79,021,261 |
| Taxable Gain | $110,451,865 |

spect to the sale in 1984 by the Estate of 58,200 additional shares for $2,620,487 and the sale by the Trust of its entire 1,101,447 shares for $58,177,080. In each sale of Holiday Inns stock, the $16 per share basis was used to evaluate the gain realized. Thus, the 1980, 1983, and 1984 income tax returns of the Estate and the 1984 income tax return of the Trust were subject to revision if the Holiday Inns debentures were undervalued by the Estate in its 1980 income tax return.

The first issue in dispute between the IRS and the Estate, however, was the proper value of the Harrah's stock. Was it more than $79,021,261, or $13.325 per share, and, if so, how much more? Resolution of the 1980 income tax issue also turned on the resolution of these questions.

The Estate challenged the IRS notice concerning the 1979 estate tax return which set the value of the Harrah's stock at $34.05, rather than $13.325, per share. During the pendency of this litigation in the Tax Court, the Estate filed in a timely manner an income tax refund claim for the 1980 taxable year on the ground that, if it had undervalued the Harrah's stock, it had then overstated the amount of capital gain it realized in the 1980 merger with Holiday Inns. This claim was placed in a "suspense" file pending the resolution of the estate tax valuation dispute.

This did not occur until January 1986, at which time the Estate and the IRS stipulated that for estate tax purposes the Harrah's stock had a value of $115,107,142 ($19.41 per share).[3] Immediately thereafter, the Estate filed a revised refund claim with respect to its 1980 income taxes.

The following year, 1987, the IRS, now focusing on the 1980 income tax return, experienced doubts about the 20% discount of the Holiday Inns debentures received in the 1980 merger. Its view was that these debentures had a value of 108% of their face value.

Obviously the 1980 income tax liability of the Estate remained unresolved. Perhaps an increase in the amount realized in the 1980 merger would offset any reduction of 1980 income taxes due to the increase in the basis of the Harrah's stock.

Nor was it resolved by September 1988 when the IRS, after inquiry by the Estate, stated it would oppose the 1980 refund claim because of the undervaluing of the Holiday Inns debentures. However, the IRS did not reject formally the Estate's revised refund claim. Therefore, on March 10, 1989, the Estate filed this action in the district court seeking a refund of $10,542,641 in income taxes for the taxable year of 1980.

For reasons not revealed by the record, the Estate did not file protective refund claims on income taxes paid with respect to its 1983 and 1984 taxable years until March 1989. The Trust, at the same time, also filed such a claim with respect to its 1984 income tax. Each of the three claims employed computations which accepted the contention of the IRS that the debentures had a tax basis of 108% of their face amount. In July and August, 1989, each of the three claims was denied on the grounds they were untimely.

As a result, the Estate, in September 1989, amended its 1980 refund action in the district court to include its income tax refund claims for the 1983 and 1984 taxable years. It sought a refund of $760,219 in income tax for 1983, and $65,184 for 1984. The Trust also joined this action in September 1989, and sought a refund of $1,233,687 for 1984.

## II.

The district court confronted two issues: the proper value of the convertible debentures of Holiday Inns received in 1980, and the timeliness of each of the income tax refund claims.[4] The district court, after a

---

3. Assuming all other figures set forth in note 2 remain the same, the revised value of the Harrah's stock would reduce the taxable gain resulting from the Holiday Inn merger to $74,365,984.

| | |
|---|---|
| Total Amount Realized | $189,473,126 |
| Revised Basis Harrah's Stock | $115,107,142 |
| Revised Gain | $74,365,984 |

4. Because of the stipulated agreement with respect to the estate tax value of Harrah's stock, the amount of gain realized on its disposition by way of the 1980 merger turned exclusively on the value of the convertible debentures received in that merger. Moreover, that value fixed the basis of the Holiday Inns shares sold in 1983 and 1984. See infra note 5.

trial on the valuation issue, concluded that the value of the debentures at the time of the merger was $87,578,649 (a discount of 16.8% rather than 20%), which was substantially less than the IRS had estimated and slightly more than the Estate had argued.[5] This figure has been accepted by the United States, and is no longer an issue in this case.

The timeliness of the three income tax refund claims is the issue before us. The United States insists that these claims were not timely filed and that the doctrine of equitable recoupment under the circumstances of this case does not permit refunds for claims barred by the statute of limitations.

We agree with the position of the United States. We reverse the judgment of the district court and order that the refund claims at issue be denied.

### III.

Jurisdiction in the district court to hear a refund claim under 28 U.S.C. § 1346(a)(1) requires that a taxpayer must have filed an administrative claim for a refund "according to the provisions of law in that regard." 26 U.S.C. § 7422(a). The administrative claim, however, must be filed by the later of three years from the filing of the return or two years from the payment of the tax. 26 U.S.C. § 6511(a). No one argues that the refund claims for 1983 and 1984 filed by the Estate and Trust met these criteria. Jurisdiction to consider these claims is lacking in the absence of a proper invocation of the mitigation provisions of 26 U.S.C. §§ 1311–1314 or the judicial doctrine of equitable recoupment. Only the latter is at issue in this appeal. Equitable recoupment, therefore, is the principle on which the Estate and Trust must rely.

### IV.

The scope of equitable recoupment's relief is narrow. This is true primarily because the estate, gift, and income taxes employ discrete segments of time within which to measure the extent of a taxpayer's liability and to provide for adjustments thereto by either the taxpayer or the government. There exists no statute or principle in tax law that requires either, for example, a "decennial" or "lifetime" adjustment of taxes requiring either refunds or additional taxes as a result of a harmonious and consistent application of taxes throughout the selected time frame. Any such principle would not only complicate the record-keeping responsibilities of both the taxpayers and the government, but would also very likely prove less advantageous to taxpayers than to the government.

On the other hand, it offends the sense of fairness to permit the sovereign to collect two taxes arising from a single transaction, one based on the taxpayer's view and the other on that of the sovereign. This ordinarily does not occur when neither party is barred by limitations from a proper adjustment. Only when the taxpayer is barred by limitations from correcting his erroneous treatment does some relief appear to be necessary. One commentator has suggested that the essence of the doctrine of recoupment is that it "allows a party to use a tax related claim, barred by the statute of limitations, as a defense to another party's timely tax related claim, where the two claims arise out of the same transaction or taxable event." [6] Neither taxpayer in this case can derive much comfort from this formulation of the doctrine of equitable recoupment.

The narrow scope of equitable recoupment is illustrated by the facts and holdings of the two leading Supreme Court decisions. In an early case, *Bull v. United States*, 295 U.S.

---

5. *See supra* note 2. This revaluation raised the basis of the Holiday Inns shares into which the debentures were converted from $16 to $16.64 per share.

6. James E. Tierney, "Equitable Recoupment Revisited: The Scope of the Doctrine in Federal Tax Cases after *United States v. Dalm*," 80 Ky.L.J. 95, 102 (1991–92). The "single transaction" empha-

sis also appears in the treatment of equitable recoupment in *Mertens Law of Federal Income Taxation* § 60.06. The doctrine applies when (1) a single transaction; (2) has been subjected to two taxes based on inconsistent legal theories; and (3) the amount claimed is barred by the statute of limitations while the asserted deficiency is timely.

247, 55 S.Ct. 695, 79 L.Ed. 1421 (1934), the interest of a deceased partner in a share of the partnership income for a fixed period after death was taxed initially as a part of the deceased partner's estate. His executor, after the receipt of this share of partnership income, did not treat it as income subject to the income tax. The Commissioner thought otherwise, and almost five years later, but within the statute of limitations applicable to the income tax, assessed a deficiency against the estate for the unpaid income tax. More than eight years after the death of the partner, his estate paid the income tax and brought suit for a refund. The Supreme Court held that the Commissioner acted properly in treating the post-death share of partnership income as income of the estate of the deceased partner, but that the amount previously paid with respect to this item in estate taxes could be recouped against the income tax even though any estate tax refund claim was barred by limitations. The importance of the "single transaction" element is revealed in these words in Justice Roberts' opinion:

> This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

295 U.S. at 262, 55 S.Ct. at 700. The "single transaction" requirement is but a reflection of the requirement that recoupment by the taxpayer on a time-barred claim is available only when it is asserted defensively against a timely claim by the government with respect to the same transaction. A time-barred claim alone cannot provide jurisdiction to remove that bar.

This was precisely the holding of *United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Dalm had been the secretary of a decedent who left his property to his brother. Dalm knew much more about the decedent's affairs than did the brother. As a consequence, Dalm, at the brother's

request, was appointed administratrix of the decedent's estate. In 1976 and 1977, Dalm received fees from the estate totalling $37,-000. In addition, she received $180,000 from the brother in 1976, and $133,813 in 1977. The brother and his wife filed a gift tax return with respect to the 1976 payment, but Dalm paid the gift tax. No gift tax return was filed with respect to the 1977 payment. In due course, the IRS asserted deficiencies in Dalm's 1976 and 1977 income tax returns in the amount of $91,471 in 1976, and $70,639 in 1977, on the grounds that the brother's payments in those years were income. Dalm petitioned the Tax Court for a redetermination of these alleged deficiencies. No claim of recoupment for gift taxes paid was raised in the Tax Court.[7] After two days of trial in the Tax Court, the parties settled the claims by agreeing that Dalm had tax deficiencies of $10,416 for 1976, and $70,639 for 1977.

Immediately thereafter, Dalm filed an administrative claim for a refund of $20,262 of gift tax, interest, and penalties paid with respect to the 1976 payment. Following the failure of the IRS to act on her claim in six months, Dalm, in 1984, brought suit on this claim in the district court. The statute of limitations applicable to a refund of the gift tax expired in 1979.

The Supreme Court reversed a judgment favorable to Dalm rendered by the Court of Appeals and held that a claim of equitable recoupment could not be the "sole basis for jurisdiction" in the federal courts.[8] This conclusion was articulated in this manner:

> [Dalm] seeks a refund not of income tax but of gift tax on which the return was filed and the tax paid in December 1976. For the District Court to have jurisdiction over her suit for refund, Dalm was required to file a claim for refund of the tax within three years of the time the gift tax return was filed or two years of the time the tax was paid, whichever period expires later. See §§ 6511(a), 7422(a). There is no question but that she failed to do so.

7. As the dissent noted, the Tax Court has been viewed as lacking jurisdiction to apply equitable recoupment. *Dalm*, 494 U.S. at 615 n. 3, 110 S.Ct. at 1371–72 n. 3 (Stevens, J., dissenting).

8. 494 U.S. at 608, 110 S.Ct. at 1368.

Having failed to comply with the statutory requirements for seeking a refund, she asks us to go beyond the authority Congress has given us in permitting suits against the Government. If any principle is central to our understanding of sovereign immunity, it is that the power to consent to such suits is reserved to Congress.[9]

In the case before us, both the Estate and Trust seek to employ equitable recoupment as the basis of jurisdiction in the absence of authorization by Congress. Neither *Bull* nor *Dalm* countenanced such an effort. Nor, in a recently decided case, did this circuit. *See Schwartz v. United States*, 67 F.3d 838, 841 (9th Cir.1995, *as amended* Nov. 21, 1995) (noting that jurisdiction may not be based on equitable recoupment alone, and distinguishing *Brockamp v. United States*, 67 F.3d 260, 261–263 (9th Cir.1995), which applied equitable tolling, not equitable recoupment, to allow the district court to hear a time-barred claim).

To avoid these roadblocks, the Estate and Trust attempt to supply the required jurisdiction by characterizing their efforts to reduce their 1983 and 1984 taxes as an assertion of equitable recoupment in respect to the open tax year of 1980. This "piggyback" argument fails for several reasons. First, consideration of 1983 and 1984 is barred by limitations. The Service's challenge to the Estate's 1980 refund claim cannot provide the jurisdiction to reexamine the returns involving 1983 and 1984 transactions, which are distinct from those occurring in 1980. True, a common thread of factual similarity links the 1983 and 1984 transactions with those of 1980, but that is not enough. Second, equitable recoupment is available, to repeat, only when the time barred claim is invoked to reduce a timely claim by the United States that the transaction giving rise to the barred claim should be taxed more heavily than it initially was. Put differently, equitable recoupment applies only to a single transaction in which the United States, having proper jurisdiction, attempts to tax the transaction more heavily than did the taxpayer, whose power to demand a refund of the tax it paid has been extinguished by limitations. Equitable recoupment under such circumstances is being used defensively. In this case, the Estate and Trust attempt to use it offensively. Under existing law, that is not permissible.

This characterization of the efforts of the Estate and Trust is not contradicted by the fact that the 1980 claim of the Estate was timely. By being so, it provided a jurisdictional basis for the district court's action with respect to it. However, it cannot provide a jurisdictional basis for considering other claims by the Estate and the Trust which were barred by limitations.

For example, a timely refund claim for taxes paid in 1994 can not be used to provide jurisdiction for a time-barred refund of taxes paid in 1985, even if there is a factual and arithmetic link between the two distinct transactions in each year. Nor would the resistance of the government to the 1994 claim impart jurisdiction to the 1985 refund claim. On the other hand, if the government were not barred from reexamining the 1985 return and did attempt to impose additional taxes on the 1985 transaction which was the basis of the 1985 refund claim, equitable recoupment would be available to account for the taxes, if any, previously paid in respect to the transaction in question.

Only the first example properly describes the difficulty which the parties in this case confront. Therefore the district court erred in employing equitable recoupment in this case.

REVERSED.

**9.** 494 U.S. at 608–10, 110 S.Ct. at 1368–69 (footnotes omitted).