United States Court of Appeals,

Eleventh Circuit.

No. 94-6724.

In re Alvin R. RYAN, Sandra L. Ryan, Debtors.

UNITED STATES of America, Plaintiff-Appellant,

v.

Alvin R. RYAN, Sandra L. Ryan, Defendants-Appellees.

Sept. 26, 1995.

Appeal from the United States District Court for the Southern District of Alabama. (No. 94-0142-RV-M), Richard W. Vollmer, Jr., Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and JOHNSON, Senior Circuit Judge.

CARNES, Circuit Judge:

Alvin R. and Sandra L. Ryan overpaid their income tax one year and requested the Internal Revenue Service to apply that overpayment to their unpaid liability for the previous tax year. Instead, the IRS applied that overpayment to the Ryans' tax liability for a different year. After filing for bankruptcy, the Ryans brought an adversary proceeding against the United States in the bankruptcy court, contending that the IRS should have followed their directions about application of the tax overpayment. The bankruptcy court agreed and issued a turnover order under 11 U.S.C. § 542, requiring the IRS either to reallocate the overpayment according to the Ryans' original directions or to pay the amount to the bankruptcy trustee. The district court affirmed.

In this appeal, the government contends that the bankruptcy court lacked jurisdiction to issue the turnover order, and alternatively that the court erred in determining that the IRS was

required to comply with the Ryans' instructions about how to apply their overpayment. We disagree with the government's first contention, but agree with the second.

## I. BACKGROUND

The facts in this case were stipulated by the parties in the bankruptcy court and are not in dispute. The Ryans reported on their federal income tax return for the 1990 tax year that they had overpaid their federal income tax liability that year by $1,319.00. The overpayment resulted from the Ryans asking their employers to withhold more than eventually became due as income tax. In a letter attached to their 1990 return, the Ryans requested that the IRS apply that overpayment to their unpaid income tax liability for the 1989 tax year. The Ryans owed approximately $1,000.00 of their 1989 income tax, and in addition, still owed income tax for the 1986, 1987, and 1988 tax years. The IRS refused the Ryans' request and informed them that it had applied the overpayment to their 1986 tax liability instead of their 1989 tax liability.

Thirteen months later, in December 1992, the Ryans filed for bankruptcy under Chapter 7 of the Bankruptcy Code. The IRS did not file a claim because the Ryans had no assets available for distribution. The Ryans received a discharge in May of 1993.

The Ryans subsequently brought an adversary proceeding against the government in the bankruptcy court. In their complaint, they asked the court to declare that their 1986, 1987, and 1988 income tax liabilities were discharged under 11 U.S.C. 523, and to determine the amount of their 1989 tax liability, which they

conceded was nondischargeable.[1]  With the ultimate goal of applying their overpayment to the tax liability that was not discharged, the Ryans argued that because their 1990 overpayment was a voluntary payment of taxes, the IRS was required to follow their instructions about how to allocate that payment.  Since the overpayment exceeded the amount they owed for 1989, they contended that they had no income tax liability for 1989.  The government responded that the Ryans did not have the power to control the application of their 1990 overpayment, because 26 U.S.C. § 6402(a) gives the IRS full discretion to credit a tax overpayment against any tax liability of the person who made the overpayment.

The bankruptcy court agreed with the Ryans.  It found that the Ryans' tax liabilities for 1986, 1987, and 1988 were discharged, a determination that is not challenged here.  As for the 1989 tax year, the court found that the IRS should have honored the Ryans' request to apply the 1990 tax year overpayment to their 1989 tax liability.  The bankruptcy court explained that when a tax payment is voluntary, the taxpayer may direct how the payment should be applied, and that the payment in this case was voluntary.  According to the court, by ignoring the Ryans' request and crediting the overpayment against the 1986 tax liability, the IRS had effectively "seized" the overpayment.  The court found that property seized by the IRS to satisfy a tax lien is subject to a

---

[1]Because the 1989 return was due "after three years before the date of the filing of the petition," 11 U.S.C.A. § 507(a)(7)(A)(i) (West 1993) (currently codified at 11 U.S.C.A. § 507(a)(8)(A)(i) (West Supp.1995));  11 U.S.C.A. § 523(a)(1)(A) (West 1993 and Supp.1995), the parties agreed that the Ryans' 1989 tax liability was excepted from discharge.

turnover order under 11 U.S.C. § 542.  Consequently, the court
ordered the IRS either to apply the overpayment to the
nondischarged 1989 tax liability, or to refund the overpayment to
the bankruptcy trustee.

The government appealed to the district court, which affirmed
without opinion.  This appeal followed.

## II. DISCUSSION OF JURISDICTION

Before proceeding to the merits of this case, we first
address a jurisdictional challenge raised by the government.  The
government argues that the statutory provision relied on by the
bankruptcy court, 11 U.S.C. § 542, did not authorize the bankruptcy
court's order in this case.  Instead, the government contends, the
appropriate procedure in this case was for the Ryans to file for a
tax refund.  Arguing that the Ryans failed to demonstrate that they
had complied with the requisite procedures for obtaining an income
tax refund, the government asserts that the court had no
jurisdiction to issue an order reallocating the overpayment.

Section 542 of the Bankruptcy Code, with certain exceptions,
requires an entity to turn over to the bankruptcy trustee any
property of the debtor and to pay the trustee any debts owed to the
debtor.  *See generally* 4 Collier on Bankruptcy ¶ 542.01 (Lawrence
P. King, ed., 15th ed. 1995).  The statute provides, in relevant
part:

**Turnover of property to the estate**

(a) Except as provided in subsection (c) or (d) of this
section, an entity, other than a custodian, in possession,
custody, or control, during the case, of property that the
trustee may use, sell, or lease under section 363 of this
title, or that the debtor may exempt under section 522 of this
title, shall deliver to the trustee, and account for, such

property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C.A. § 542(a), (b) (West 1993).

According to the government, neither subsection (a) nor subsection (b) of § 542 authorized the bankruptcy court to order the IRS to turnover the Ryans' overpayment. The government contends that subsection (a), the provision specifically relied upon by the bankruptcy court, applies only to property in which the debtor had an interest as of the commencement of the bankruptcy case. Section 542(a) applies to property "that the trustee may use, sell, or lease under section 363...." 11 U.S.C.A. § 542(a) (West 1993). The trustee may use, sell, or lease "property of the estate," 11 U.S.C.A. § 363(b)(1) (West Supp.1995), which is defined in part as "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C.A. § 541(a)(1) (West 1993). Because the IRS had credited the overpayment to the 1986 liability thirteen months prior to the commencement of the bankruptcy case, the government argues that the debtors no longer had any legal or equitable interest in the overpayment. In other words, the overpayment no longer existed once the IRS applied it to the 1986 tax liability.

In addition, the government argues that § 542(b), which was not specifically cited by the bankruptcy court, also is inapplicable. That provision requires an entity to pay any matured

debt owed to the debtor, "except to the extent that such debt may be offset...."  11 U.S.C.A. § 542(b) (West 1993).  The government argues that even if the overpayment existed at the time of the bankruptcy case, the government would not be required to refund it to the trustee because the IRS was authorized under 26 U.S.C. § 6402 to offset it against the 1986 tax liability.

The bankruptcy court relied upon *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), which held that § 542(a) allowed a bankruptcy court to order the turnover of personal property the IRS had seized prior to bankruptcy in order to satisfy a tax lien.  462 U.S. at 208-09, 103 S.Ct. at 2315-16.  That decision is inapplicable here, the government contends, because the debtor in *Whiting Pools* retained an equitable interest in the seized property until it was sold, even though he had lost possession of the property.  In contrast, the Ryans no longer had any property interest in the 1990 overpayment after the IRS extinguished the overpayment by applying it to another year's tax liability.

Moreover, the government argues, money paid into the United States Treasury is not identifiable property subject to a turnover order.  In *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), the Supreme Court held that a bankruptcy court's *in rem* jurisdiction did not allow a bankruptcy trustee to recover an unauthorized postpetition transfer to the IRS when the Bankruptcy Code had not otherwise waived the government's sovereign immunity from a trustee's claim for monetary relief.  *Id.*

at 38-39, 112 S.Ct. at 1017.[2]   In reaching this conclusion, the Court reasoned that the trustee "sought to recover a sum of money, not "particular dollars,' " and thus "there was no *res* to which the court's *in rem* jurisdiction could have attached."  *Id.*   The *Nordic Village* Court distinguished *Whiting Pools* on the grounds that a "suit for payment of funds from the Treasury is quite different from a suit for the return of tangible property in which the debtor retained ownership."  *Id.*  According to the government,  *Nordic Village* supports its contention that an overpayment of taxes is not the type of property that can be subject to a turnover order by the bankruptcy court.

Instead, the government contends, the Ryans' action to have their 1990 overpayment credited against their 1989 tax liability is a really a suit for a tax refund.  The government cites  *United States v. Dalm,* 494 U.S. 596, 609 n. 6, 110 S.Ct. 1361, 1368 n. 6, 108 L.Ed.2d 548 (1990), which held that there is no distinction between "refund actions and suits for funds wrongfully retained," and that a refund action is appropriate when "a taxpayer pays more than is owed, for whatever reason or no reason at all."  The government argues that the bankruptcy court did not have the power to order a refund, because the Ryans failed to establish that they satisfied the jurisdictional prerequisites for a refund action.

---

[2]*Nordic Village*'s restrictive reading of the Bankruptcy Code's waiver of sovereign immunity was superseded by the 1994 amendments to the Bankruptcy Code.  As the government acknowledges, sovereign immunity is not an issue in this case, because the Bankruptcy Reform Act provides for retroactive application of the Code's waiver of sovereign immunity.  *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, §§ 113, 702(b)(2)(B), 108 Stat. 4106, 4117-18, 4150.

We need not decide whether a § 542 turnover order can ever be an appropriate means of retrieving tax overpayments, or if instead, as the government contends, the only proper means is through a refund action.  Even assuming that the government is correct about the inapplicability of turnover jurisdiction to these facts, the bankruptcy court still had jurisdiction, because the Ryans did satisfy the procedural requirements for bringing a refund action.

Under § 505 of the Bankruptcy Code, a bankruptcy court is given the power to "determine the amount or legality of any tax...."  11 U.S.C.A. § 505(a)(1) (West 1993).  However, § 505 also expressly prohibits the court from determining "any right of the estate to a tax refund, before the earlier of ... (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed;  or (ii) a determination by such governmental unit of such request."  11 U.S.C.A. § 505(2)(B) (West 1993).  In addition to the limitation in § 505(2)(B) of the Bankruptcy Code, the Internal Revenue Code prescribes a similar restriction on the ability of a court to determine a taxpayer's right to a refund:

> No suit or proceeding shall be maintained *in any court* for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary....

26 U.S.C.A. § 7422(a) (West 1989) (emphasis added).  The requisite administrative claim must be filed with the IRS within three years after the return was filed, or within two years after the tax was paid.  26 U.S.C.A. § 6511(a) (West Supp.1995).  It is these procedural requirements that the government contends were not met,

thus depriving the bankruptcy court of jurisdiction over the matter in this case.

The Supreme Court has held that unless a claim for refund has been properly filed within the applicable time period, a suit for refund "may not be maintained in any court." *Dalm,* 494 U.S. at 602, 110 S.Ct. at 1365; *see also Mutual Assurance, Inc. v. United States,* 56 F.3d 1353, 1355-56 (11th Cir.1995) ("[A] taxpayer's filing of an administrative refund claim with the IRS in accordance with the relevant provisions of the Internal Revenue Code is a jurisdictional prerequisite to the maintenance of a tax refund suit."); *Charter Co. v. United States,* 971 F.2d 1576, 1579 (11th Cir.1992) ("A taxpayer may not sue the United States for a tax refund until it first files a refund claim with the government."); *Vintilla v. United States,* 931 F.2d 1444, 1446 (11th Cir.1991) (explaining that, under *Dalm,* timely claim for refund is jurisdictional requirement in tax refund suits); *In re Graham,* 981 F.2d 1135, 1138 (10th Cir.1992) (holding that bankruptcy court erred in awarding tax refund because §§ 505 and 7422 are "nonwaivable jurisdictional requirements"); *In re Smith,* 921 F.2d 136, 139 (8th Cir.1990) (holding that bankruptcy court's turnover order against the IRS would be barred in absence of timely claim for refund).

Under the relevant Treasury Regulations, a properly executed income tax return "shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return...." 26 C.F.R. § 301.6402-3(a)(5) (1994). The regulations also state that a "claim

must set forth in detail each ground upon which a ... refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof....  A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."  26 C.F.R. § 301.6402-2(b)(1) (1994).  As we have interpreted this requirement, "crystal clarity and exact precision are not demanded," but "at a minimum the taxpayer must identify in its refund claim the "essential requirements' of each and every refund demand."  *Charter,* 971 F.2d at 1580;  *see also Sanders v. United States,* 740 F.2d 886, 890 (11th Cir.1984) (noting that under Treasury Regulations, taxpayer must "state the exact basis" of his refund claim);  *Foyt v. United States,* 561 F.2d 599, 604 (5th Cir.1977) ("[N]o refund will be allowed except on a ground clearly stated and supported by facts sufficient to apprise the Commissioner of the exact basis of the taxpayer's claim.");  *Dahlgren v. United States,* 553 F.2d 434, 441 (5th Cir.1977);  *Stoller v. United States,* 444 F.2d 1391, 1392-93 (5th Cir.1971).

Therefore, under 11 U.S.C. § 505 and 26 U.S.C. § 7422, in order to decide whether the Ryans can bring an action in the bankruptcy court for refund of their 1990 tax overpayment,[3] we must ascertain whether they had previously presented an administrative claim that satisfied the "essential requirements test" and that was

---

[3]The government contends in its brief that the Ryans were required to file a claim for refund of their "*1986* tax liability."  (emphasis added).  However, the 1990 tax year is the appropriate subject of a refund action because that is the year that the Ryans overpaid their taxes.  Moreover, if the Ryans properly filed a claim for refund of their 1990 overpayment—as we conclude in this case—they would not be required to file an additional claim for the 1986 tax year simply because that was the liability to which the overpayment was applied.

timely filed. Our consideration of these issues is somewhat handicapped by the fact that the Ryans' 1990 income tax return has not been included in the record on appeal. Normally, the Ryans' failure to include the return would prevent us from deciding whether the tax return met the requirements for filing a refund claim, and thus deciding whether we have jurisdiction. However, in this case, we believe that the facts upon which the parties have agreed in their stipulation and in their briefs to this Court are sufficient to show that the Ryans filed a proper and timely refund claim. Thus we are able to conclude that the jurisdictional prerequisites have been met without reviewing the 1990 income tax return, which is the actual claim for refund.

As stated previously, under the Treasury Regulations, an income tax return is sufficient to constitute a claim for refund, but it must state the "essential requirements" of the refund demand. The parties in this case agree that the Ryans' 1990 income tax return reported an overpayment and that, in a written request filed with the return, the Ryans instructed the IRS to apply the overpayment to their outstanding tax liability for 1989. Moreover, as the government acknowledges, the Ryans' return specifically indicated that their overpayment was caused by excess employer withholding and stated the exact amount that they claimed had been overpaid to the government.

These undisputed facts show that the Ryans' 1990 income tax return sufficiently set forth the essential requirements of a refund claim. Because their return specifically indicated the source and amount of their overpayment, "the Commissioner was not

... left to his own devices in order to discover the precise nature of [the] taxpayer's claim...." *Sanders,* 740 F.2d at 890 (quotation marks and citation omitted); *see also Charter,* 971 F.2d at 1579 (explaining that government is not required to "hazard a guess" about substance of taxpayer's refund claim). There is not much more the Ryans could have stated on their refund claim beyond that which they did. Indeed, the fact that the IRS subsequently used the Ryans' claimed overpayment to offset their 1986 tax liability demonstrates that the IRS was provided with all the information necessary to examine and resolve the Ryans' refund claim.

Finally, the stipulated facts show that the Ryans met the statutory time limits for bringing a refund action on their 1990 overpayment. Section 505 was satisfied because the Ryans did not bring their adversarial action against the government until after a proper request for refund had been presented to, and denied by, the IRS. *See* 11 U.S.C. § 505(2)(b). Moreover, because the refund claim was filed simultaneously with the filing of their tax return, and indeed as part of it, the claim came within the three-year period prescribed by 26 U.S.C. § 6511(a). The procedural prerequisites for a refund action were met.

For these reasons, we reject the government's challenge to the bankruptcy court's jurisdiction. We turn now to the merits of the appeal.

### III. DISCUSSION OF MERITS

The bankruptcy court found that, under the IRS's "voluntary payment rule," "if a payment of taxes is voluntary, the taxpayer may direct how the payment is to be applied by the Internal Revenue

Service."  Because the IRS had not taken any action to collect the delinquent taxes for the prior years when the Ryans overpaid their 1990 taxes, the court concluded that the overpayment was voluntary and that the IRS was required to follow the Ryans' instructions about how to apply it.  The issue of whether a taxpayer or the IRS is entitled to determine how to allocate a tax overpayment among various tax liabilities is a question of law subject to *de novo* review.  *E.g., In re Haas,* 48 F.3d 1153, 1155 (11th Cir.1995).

The government argues that 26 U.S.C. § 6402(a) specifically authorizes the IRS to credit an overpayment against any tax liability of a taxpayer.  That statute states:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.

26 U.S.C.A. § 6402(a) (West Supp.1995);  *see* 26 U.S.C.A. § 6401(b)(1) (West 1989) (defining tax overpayment).  The government contends that the bankruptcy court erroneously applied the voluntary payment rule instead of § 6402(a) in deciding that the Ryans could designate how to apply their overpayment.

According to the government, under the voluntary payment rule, when a taxpayer who has outstanding tax liabilities voluntarily makes a payment, the IRS usually will honor a taxpayer's request about how to apply that payment.  However, the government distinguishes *partial payments* of delinquent tax debts, to which no statute applies and to which the IRS applies its voluntary payment rule, from *overpayments,* which are governed by the clear rule of §

6402(a) and implementing regulations. Stating the government's position another way: the voluntary payment rule applies when a taxpayer voluntarily makes a partial payment on his tax liabilities and designates the liability which should be credited at the time the payment is made; on the other hand, § 6402(a), and not the voluntary payment rule, applies to money that comes into the hands of the government because of overpayment of a particular liability. *See generally Sorenson v. Secretary of Treasury,* 475 U.S. 851, 861, 106 S.Ct. 1600, 1607, 89 L.Ed.2d 855 (1986) ("Sections 6401 and 6402 address the operation of the tax-refund process under the Internal Revenue Code. They define the status of certain tax credits, set up a mechanism for disbursing refunds, and direct the Secretary to divert certain amounts from the refund process.").

The Ryans disagree with the government's attempt to distinguish overpayments from partial payments. They contend that the only question "is whether the payment is made under the taxpayer's own volition." In defense of the bankruptcy court's application of the voluntary payment rule, the Ryans cite a revenue ruling issued by the IRS, which states: "A partial payment of assessed tax, penalty, and interest made by a cash method taxpayer with directions as to its application will be so applied." Rev.Rul. 73-305, 1973-2 C.B. 43, *modified by* Rev.Rul. 79-284, 1979-2 C.B. 83. However, that ruling, by its own terms, only applies to partial payments. The Ryans do concede that § 6402(a) and the accompanying regulations give the IRS the discretion to apply a tax overpayment to any tax liability, but they argue that the IRS has already exercised its discretion by publicly stating in a revenue

ruling that it will allow a taxpayer to control the allocation of any payments that are voluntarily made. The Ryans contend that Revenue Ruling 73-305 applies to all voluntary payments of taxes and does not on its face exclude overpayments caused by excessive withholding.

Because both parties agree that the statute, § 6402(a), plainly gives the IRS the discretion to apply overpayments to any tax liability, the issue in this case is a narrow one: whether the IRS, despite this statutory grant of authority, has administratively decided to restrict its discretion and abide by the voluntary payment rule when a taxpayer makes an overpayment. Whatever may be the situation with tax payments other than overpayments—a question we need not address—we hold that the government has convincingly demonstrated that the IRS has not administratively restricted its authority to decide how to allocate overpayments. In other words, the IRS has not extended its voluntary payment rule to overpayments.

To support their position that the voluntary payment rule does apply to overpayments such as the one in this case, both the bankruptcy court and the Ryans cite an opinion from this Court, which stated: "As a general rule, when a taxpayer directs the manner in which a payment is to be allocated among various taxes due, the Internal Revenue Service must comply with the taxpayer's request." *Matter of A & B Heating & Air Conditioning,* 823 F.2d 462, 463 (11th Cir.1987), *vacated and remanded,* 486 U.S. 1002, 108 S.Ct. 1724, 100 L.Ed.2d 189, *further opinion,* 861 F.2d 1538 (11th Cir.1988), *remanding to be dismissed as moot,* 878 F.2d 1311 (11th

Cir.1989). That decision is not binding on this Court because it subsequently was vacated and dismissed, but even if it were still law, it is distinguishable. Unlike this case, in *A & B Heating* overpayments were not involved, and thus § 6402(a) was not implicated. *A & B Heating* does not establish that the IRS applies the voluntary payment rule to overpayments of taxes.

The Treasury Regulations promulgated under § 6402(a) demonstrate that the IRS does not apply the voluntary payment rule to overpayments. Mirroring the statute, the regulations authorize the IRS to credit "any overpayment of tax" against "any outstanding liability for any tax...." 26 C.F.R. § 301.6402-1 (1994). The regulations further delineate that, when a taxpayer's withheld wages exceed the amount of tax shown on his return, the IRS "may make credit or refund of such overpayment without awaiting examination of the completed return and without awaiting filing of a claim for refund." 26 C.F.R. 301.6402-4 (1994). The regulations do provide that a taxpayer can instruct the IRS to credit his overpayment against the estimated tax for the taxable year immediately *succeeding* the overpayment. 26 C.F.R. § 301.6402-3(a)(5) (1994). However, the regulations also provide that the IRS may override that election and apply the overpayment against "any outstanding liability for any tax...." 26 C.F.R. § 301.6402-3(a)(6)(i) (1994).

The Treasury Regulations, therefore, contradict the Ryans' position that the IRS has chosen to restrict its statutorily granted discretion to control the allocation of overpayments. To the extent that the IRS has decided to give a taxpayer any ability

to designate the application of overpayments, it has limited the taxpayer to requesting a credit for the succeeding tax year, and even that request can be refused by the IRS. In this case, of course, the taxpayers requested allocation of the overpayment not to a succeeding tax year but to a particular prior year.

Our decision in this case is consistent with that of the Second Circuit in *Kalb v. United States,* 505 F.2d 506 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). In that case, the Second Circuit rejected the argument that, because a tax overpayment was voluntary, the IRS was bound to comply with the taxpayer's direction about how to apply that payment. *Id.* at 509. The Court held that § 6402(a) "clearly gives the IRS discretion to apply a refund to "any liability' of the taxpayer." *Id.* The Ryans have cited no instance in which the IRS has specifically applied the voluntary payment rule to overpayments, or any authority for the proposition that § 6402(a) and the Treasury Regulations mean anything other than what they clearly say.

We hold, therefore, that the bankruptcy court erred in applying the voluntary payment rule to the Ryans' 1990 tax year overpayment. Pursuant to clear statutory authority and the implementing Treasure Regulations, the IRS has the discretion to designate the application of overpayments among a taxpayer's various tax liabilities.

### IV. CONCLUSION

The district court's order affirming the turnover order of the bankruptcy court is REVERSED.