T.C. Summary Opinion 2005-59

UNITED STATES TAX COURT

DAVID E. AND SUSANA V. JUDD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 873-04S.                    Filed May 18, 2005.

<u>Paul C. Allred</u>, for petitioners.

<u>Marty J. Dama</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of sections 6330(d) and 7463 of the Internal
Revenue Code in effect at the time that the petition was filed.
Unless otherwise indicated, all section references are to the
Internal Revenue Code in effect for the year in issue.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.

The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). Pursuant to section 6330(d), petitioners seek review of respondent's determination to proceed with collection of their tax liability for 1996.

After a concession,[1] the issues for decision are: (1) Whether respondent impermissibly applied petitioners' overpayment for 1995 against their unpaid tax liability for 1985 rather than for 1996; and (2) whether the Appeals officer abused her discretion in sustaining a proposed levy to collect petitioners' unpaid 1996 tax liability.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. Petitioners resided in Dallas, Texas, at the time the petition was filed.

During 1995, petitioner David E. Judd was an attorney, and petitioner Susana V. Judd did not work outside the home.

Petitioners timely filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, for 1985. They then filed Form 2688, Application for Additional Extension of Time To File U.S. Individual Income Tax Return. On October 22, 1986, petitioners jointly filed with the

---

[1]Respondent concedes that petitioners' estimated tax payments for 1995 totaled $29,000.

Internal Revenue Service (IRS) a Form 1040, U.S. Individual Income Tax Return, for tax year 1985, showing a tax liability of $12,428.61. No payment was remitted with the return.

During 1995 and in January 1996, petitioners made estimated tax payments for tax year 1995 totaling $29,000. Petitioners did not timely file a Form 1040 for 1995. On January 15, 1996, respondent applied $7,879.24 from petitioners' 1995 and January 1996 estimated tax payments to petitioners' outstanding tax liability for 1985.

On October 15, 1996, petitioners filed a chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Texas (bankruptcy court). Respondent filed proofs of claim which included petitioners' 1985 income tax liability as a general unsecured claim.

During the pendancy of their chapter 13 bankruptcy, petitioners timely filed a joint Form 1040 for 1996, showing a tax liability of $10,506. A payment of $2,802 was remitted with the return.

On July 23, 1997, the bankruptcy court issued an Agreed Order Allowing Claim of Internal Revenue Service, which allowed respondent a general unsecured nonpriority claim of $148,734.40, and a secured claim of $17,247 against petitioners. On October 21, 1997, the bankruptcy court confirmed petitioners' chapter 13 plan.

On April 15, 1998, petitioners filed their joint Form 1040 for 1995 showing a total tax of $21,295.90 and an overpayment of $7,704.10. On the Form 1040, petitioners indicated that they wanted the overpayment to be applied to their 1996 estimated taxes. On August 31, 1998, respondent assessed tax of $21,120.76 on petitioners' 1995 return.

Petitioners' chapter 13 bankruptcy case was completed on March 6, 2001, and a Notice of Plan Completion was filed on July 11, 2001. On August 13, 2001, the bankruptcy court entered its Order Discharging Debtor After Completion of Chapter 13 Plan.

On October 27, 2002, respondent issued to petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing regarding collection of petitioners' 1996 income tax liability. Petitioners timely filed a Form 12153, Request for a Collection Due Process Hearing (hearing).

During the hearing, petitioners asserted that their tax liability for 1996 was paid in full through the application of the overpayment from their 1995 return in addition to the payment submitted with the 1996 return. Appeals Officer Deborah Glover (Ms. Glover) informed petitioners that the 1995 overpayment had been applied to their 1985 tax liability. Petitioners asserted that since they had undergone a bankruptcy, they should not owe anything.

Ms. Glover attempted to discuss collection alternatives with petitioners, but they declined to provide any financial information.  She informed petitioners that they were not eligible for an installment agreement because they were not current in their estimated tax payments or their filing obligations.  Petitioners had not filed a tax return since 2002.  On December 17, 2003, respondent sent petitioners a notice of determination sustaining the proposed levy to collect their 1996 income tax liability.

Petitioners timely filed a petition in this Court in which they alleged that "the Internal Revenue Service violated an order of the U.S. Bankruptcy Court, Eastern District of Texas in the manner and time of its allocation of funds in its possession for payment to tax years covered in the bankruptcy.  In the alternative, the Internal Revenue Service violated the intent of the bankruptcy court's orders."

<u>Discussion</u>

1.   <u>IRS's Application of Petitioners' 1995 Funds Against Petitioners' 1985 Tax Liability</u>

a.   <u>Did the IRS Violate a Bankruptcy Order by Applying Petitioners' 1995 Overpayment to Their 1985 Tax Liability</u>?

Petitioners allege that the IRS violated an order of the bankruptcy court in the manner and time of its allocation of funds in its possession for payment to tax years covered in the bankruptcy.  The Certificates of Official Record for petitioners'

1995 and 1985 tax years reflect that the application of the funds from petitioners' 1995 account to their outstanding 1985 tax liability occurred on January 15, 1996. Petitioners did not file their bankruptcy petition until October 15, 1996. Therefore, the Court concludes that there could not have been a violation of any bankruptcy order prior to the filing of a bankruptcy petition.

In any event, if the IRS has violated an order of the bankruptcy court, it has not been definitively established that the authority of this Court extends to such questions and, if so, the appropriate remedy for such violation.[2] Even if we had the authority, this Court might still defer to the bankruptcy court based on comity and judicial efficiency, as well as our recognition that this Court does not deal with bankruptcy matters and does not have the expertise that the bankruptcy court would. Meadows v. Commissioner, 95 AFTR 2d 2005-1785, 2005-1 USTC par. 50274 (11th Cir. 2005) (citing Washington v. Commissioner, 120 T.C. 114, 125 (2003) (Wells, J., concurring)).

---

[2]We note that actions against creditors for violations of automatic stays are to be brought in the bankruptcy court. See 11 U.S.C. sec. 362(h) (2000); see also Meadows v. Commissioner, 95 AFTR 2d 2005-1785, 2005-1 USTC par. 50274 (11th Cir. 2005) (citing Langlois v. United States, 155 Bankr. 818 (N.D.N.Y. 1993)) (sitting in bankruptcy jurisdiction and holding that the IRS's application of a collected amount to penalties that were to be discharged in bankruptcy was a violation of the automatic stay). Thus, it is clear that the bankruptcy court is more knowledgeable than the Tax Court about the scope and effect of the automatic stay and about appropriate remedies.

b.   The Right of Setoff Under Section 6402(a)

The IRS's right to set off derives from section 6402(a), which permits the IRS to set off any existing tax deficiencies against any tax refunds due the taxpayer.  Section 6402(a) provides:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person.[3]

Effectively, section 6402(a) provides that a party is entitled to a tax refund only of the amount which exceeds any outstanding tax liabilities.  In re Davis, 889 F.2d 658, 661 (5th Cir. 1989); Kabbaby v. Richardson, 520 F.2d 334 (5th Cir. 1975); United States v. Rochelle, 363 F.2d 225, 232-233 (5th Cir. 1966).

Petitioners contend that respondent could not apply the overpayment of their voluntary 1995 estimated taxes to their outstanding 1985 tax liability because on their 1995 return petitioners directed that the overpayment should be applied to their 1996 estimated taxes.

When a taxpayer makes voluntary payments to the IRS, he or she has a right to direct the application of those payments to

---

[3]Sec. 6402(a) was amended by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3711(a), 112 Stat. 779, to include a reference to subsec. (e). That amendment applies to refunds payable after Dec. 31, 1999, and is not applicable to this case.

whatever type of liability he chooses.  Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987); Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983); O'Dell v. United States, 326 F.2d 451, 456 (10th Cir. 1964).  Under the voluntary payment rule, when a taxpayer who has outstanding tax liabilities voluntarily makes a payment, the IRS usually will honor a taxpayer's request as to how to apply that payment.  In re Ryan, 64 F.3d 1516, 1522 (11th Cir. 1995).  However, the Treasury regulations promulgated under section 6402(a) demonstrate that the IRS does not apply the voluntary payment rule to overpayments.

The regulations do provide that a taxpayer can instruct the IRS to credit his overpayment against the estimated tax for the taxable year immediately succeeding the overpayment.  Sec. 301.6402-3(a)(5), Proced. & Admin. Regs.  However, the regulations mirror the statute and authorize the IRS to override that election and apply the overpayment against "any outstanding liability for any tax".  Sec. 301.6402-3(a)(6)(i), Proced. & Admin. Regs.; see N. States Power Co. v. United States, 73 F.3d 764, 767 (8th Cir. 1996) (citing In re Ryan, supra at 1523 ("[Section 6402], plainly gives the IRS the discretion to apply overpayments to any tax liability")); Pettibone Corp. v. United States, 34 F.3d 536, 538 (7th Cir. 1994) (section 6402(a) "leaves to the Commissioner's discretion whether to apply overpayments to

delinquencies or to refund them to the taxpayer"); <u>Kalb v. United States</u>, 505 F.2d 506, 509 (2d Cir. 1974) (rejecting the argument that because tax overpayment was voluntary, IRS was bound to comply with the taxpayer's direction about how to apply that payment; section 6402(a) "clearly gives the IRS discretion to apply a refund to 'any liability' of the taxpayer").

Clearly, petitioners' right to designate payments does not extend to overpayments. Respondent's application of petitioners' 1995 overpayment to their 1985 liability falls within his authority to credit overpayments to any liability for any tax year and was, therefore, proper.

2.  <u>Whether the Appeals Officer Abused Her Discretion in Sustaining the Proposed Levy</u>

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing. Section 6330(c)(2)(A) provides that a person may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and possible alternative means of collection. See <u>Sego v. Commissioner</u>, 114 T.C. 604, 609 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 180 (2000).

The taxpayer may raise challenges "to the existence or amount of the underlying tax liability", however, only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). Pursuant to section

6330(c)(2)(B), petitioners were entitled to challenge the existence or amount of the underlying tax liabilities for 1996 at their Appeals Office hearing. If the validity of those underlying tax liabilities is properly at issue, the Court reviews the matter de novo. Poindexter v. Commissioner, 122 T.C. 280, 284 (2004); Sego v. Commissioner, supra at 610.

Petitioners did not address their 1996 tax liability in the hearing or at trial and have failed to aver or prove facts sufficient to show error in the assessments. Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the administrative determination of the Appeals Office for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-183. The Court reviews only whether the Appeals officer's decision to sustain the proposed levy was arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

During the hearing, petitioners did not challenge the amount of their underlying 1996 tax liability. They were ineligible for an installment agreement because they were not current in their tax obligations and estimated tax payments. Petitioners declined to give Ms. Glover any financial information with which she could determine the appropriateness of any other collection alternatives.

Petitioners have failed to present grounds on which this Court could find that the Appeals officer abused her discretion in sustaining the proposed levy. Accordingly, collection by levy of petitioners' unpaid 1996 tax liability reflected in the notice of determination may proceed.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent</u>.