# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60735

United States Court of Appeals
Fifth Circuit

**FILED**
October 28, 2019

Lyle W. Cayce
Clerk

ANTHONY LAIRD,

      Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-392

Before OWEN, Chief Judge, and JONES and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge: *

Plaintiff Anthony Laird used personal funds to make a partial payment on his corporation's employment taxes. The IRS later informed him the particular tax had been overpaid. Rather than refund the overpayment to him, the IRS exercised its right of setoff and applied the overpayment to another portion of the corporation's tax deficiencies. The district court dismissed the case for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but we conclude that the IRS's right of setoff may not apply to these unusual facts.

---

  * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60735

Because limitations bars part of Laird's recovery, however, we VACATE in part, DISMISS in part, and REMAND.

## BACKGROUND

### I. Tax Terms

For clarity, we explain the key tax terms involved in this case. Generally speaking, a corporation's employment taxes consist of two parts. The first part is commonly called the Trust Fund Tax Liability. "The Internal Revenue Code requires employers to withhold from their employees' paychecks money representing employees' personal income taxes, unemployment insurance, and social security taxes that those employees owe or will owe the government." *IRS v. Energy Res. Co.* (*In re Energy Res. Co.*), 871 F.2d 223, 225 (1st Cir. 1989) (citing statutory provisions). These taxes are referred to as "trust fund taxes" because the employer holds them "in trust for the United States." The second part of the employment tax is called the Non-Trust Fund Tax Liability. The employer is directly liable for this portion of the tax and does not hold any money in trust.

Sometimes, as in this case, an employer fails to pay the trust fund liability. If that happens, the IRS "can collect an equivalent sum directly from the officers or employees of the employer who are responsible for their collection and payment." *Id.* This is called a Trust Fund Recovery Penalty.

### II. Facts

Anthony Laird owned and operated Laird Electric Company, Inc., a Mississippi corporation. The company was many years behind on its employment tax payments. Specifically, it had not made several quarterly payments spanning from 2006 to 2010. In 2014, Laird sent three checks to the IRS as partial payment for the trust fund portions of those taxes, namely, three payments of $20,000, $25,000, and $1,500 respectively, for a total of $46,500. Each of these three checks was accompanied by instructions explaining that

2

the payments were to be applied only to the trust fund portions of the company's tax liabilities, from the oldest unpaid quarter to the newest, until all the payments were exhausted.  The IRS initially applied the checks to the company's trust fund balance for the second quarter of 2006.

By January 2015, however, the company was still behind in its employment taxes in the amount of $380,115.40.  That figure included taxes owed from the third quarter of 2006 through the fourth quarter of 2010 for both trust fund and non-trust fund liability.  Because of this unpaid debt, attorney Harris Barnes, who represents both the company and Laird, received a document from the IRS called "Form 2751 – Proposed Assessment of Trust Fund Recovery Penalty."  This document showed all of the company's remaining balances.  An accompanying letter explained that because the IRS had not received all of the company's outstanding payments, it proposed to assess a Trust Fund Recovery Penalty personally against Laird.  This penalty is "equal to the unpaid trust fund taxes which the business still owes the government."  The total penalty covering all relevant tax quarters amounted to $145,337.51.

After receiving these documents, Laird sent the IRS a check for $145,337.51.  This check again included instructions explaining that it should be applied only to the trust fund portion of the company's taxes.  It also included a form that Laird signed consenting to the assessment of the Trust Fund Recovery Penalty.[1]  Laird thus agreed to be personally liable for, and paid, the remaining balance of the trust-fund portion of his company's taxes.

Later, Mr. Barnes discovered that the IRS had erroneously assessed an additional $28,413.18 in taxes against the company for the second quarter of 2006.  The IRS admitted its error upon being informed and abated the

---

[1] The district court's conclusion that Laird did not consent was plainly in error.

additional tax as well as associated penalties and interest. The abatement resulted in a $50,026.46 overpayment for the second quarter of 2006. But despite the overpayment, the company remained in arrears for the non-trust fund portions of several other quarters. IRS removed the overpayment from the company's ledger for the second quarter of 2006 and applied it to the non-trust fund portions of the company's outstanding obligations for other quarters. The IRS could not apply the overpayment to the company's trust-fund liability because Laird's compliance with the Trust Fund Recovery Penalty had satisfied all of that debt.

Following all of these payments, the company had fully paid its employment taxes for the second quarter of 2006. And of the company's original $380,115.40 debt from the third quarter of 2006 to 2010, Laird had now paid the trust fund portion in full via the $145,337.51 Trust Fund Recovery Penalty, leaving a remaining balance of $234,777.89, which constituted the non-trust fund portion. The IRS had used the $50,026.46 overpayment to reduce part of the non-trust fund liability, but the company remained in arrears.

Laird now alleges that the overpayment arose from the three checks totaling $46,500 that were accompanied by instructions specifically stating that they were to be applied only to the trust fund portion of the company's taxes. Laird contends that the IRS disregarded his instructions by applying the overpayment, designated only for trust-fund liability, to non-trust fund liability. Because the IRS disregarded his instructions, Laird asserts that he is entitled to a refund of $52,038.12, which represents "all credits for tax period ending June 30, 2006 [the second quarter] applied to the non-trust fund portion

4

No. 18-60735

of employment tax liabilities of the taxpayer for other tax periods."[2]  The bulk of that figure is the three payments totaling $46,500.

## III.  Procedural History

Laird filed an administrative claim with the IRS requesting a refund, but the IRS did not respond.  Laird filed suit for the refund in the U.S. District Court for the Southern District of Mississippi.  The Government moved to dismiss the case under Rule 12(b)(6), and the district court granted the motion.  Laird moved to reconsider under Rule 59(e), but the district court denied that motion.  Laird now appeals.

## STANDARD OF REVIEW

"Questions of subject-matter jurisdiction are reviewed *de novo.*" *Hous. Refining, L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014).

"A dismissal for failure to state a claim under Rule 12(b)(6) is reviewed *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Whitaker v. Collier*, 862 F.3d 490, 496−97 (5th Cir. 2017) (internal quotation marks omitted).  On a motion to dismiss, our inquiry is normally limited to the plaintiff's complaint and documents that are attached to or incorporated in the complaint.  *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017−18 (5th Cir. 1996).

---

[2] Laird's $52,038.12 claim, is slightly higher than the amount of the overpayment, which was $50,026.46.  For the reasons explained below, however, this difference is ultimately immaterial.

No. 18-60735

## DISCUSSION

Three issues are pertinent to this appeal. First, the Government contends that Laird lacks standing to contest the three payments totaling $46,500. Second, the Government argues that the statute of limitations bars Laird from any recovery exceeding $46,500. Third, on the merits, Laird contends that the IRS owes him a refund because, by applying the overpayment to non-trust fund liability, it disregarded his instructions to apply his $46,500 payment only to trust fund liabilities.[3]

### I. Standing

The Government contends that Laird lacks standing to contest and recover the three payments totaling $46,500. Specifically, the Government argues that the Laird Electric Company, not Laird individually, made the three payments, leaving Laird himself with no financial injury.[4] We disagree.

The "irreducible constitutional minimum of standing contains three elements": (1) a concrete and particularized injury; (2) fairly traceable to the Defendant's challenged action; and (3) likely redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560−61, 112 S. Ct. 2130, 2136 (1992). In refund cases,

> [u]nder I.R.C. 6402(a), a refund may only be obtained by the taxpayer who made the overpayment. As other circuits have construed this provision in the context of refund actions, it means that standing is limited to the party or parties who have at least arguably or derivatively made an actual overpayment, such that they have a financial interest in the litigation. We agree with our sister circuits on this point, whose necessary corollary is that any

---

[3] Laird also asserts that the district court erred in denying his motion to reconsider, but this is intertwined with the dismissal order.

[4] Of course, "the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders." *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 977 (Miss. 2007) (internal quotation marks omitted).

6

No. 18-60735

party's standing to seek a refund in a given case is limited to the amount of his own overpayment.

*Delaune v. United States*, 143 F.3d 995, 1006 (5th Cir. 1998). The traceability prerequisite of standing is not challenged here.

Despite the Government's contention, the attachments to Laird's complaint strongly suggest that Laird personally paid the $46,500, and thus incurred a stake in this refund litigation. The Government misleadingly asserts that Laird's complaint does not identify who funded the three cashier's checks comprising the $46,500. Yet each of them identifies as the "remitter" either "Tony Laird" or "Troy Laird,"[5] not the company. The remitter is the person who furnishes funds that the bank uses when issuing the cashier's check. The fact that Mr. Barnes's transmittal letters with the checks referenced Laird Electric Company as the "taxpayer" simply identifies to whose credit the tax payments should be directed. The checks appear to show that Laird made the payments and satisfy the injury component of standing sufficiently to withstand dismissal.

Further, Laird's financial injury is theoretically redressable to the extent that he, not the company, would be the one to receive a refund if he prevails. The Supreme Court has interpreted 26 U.S.C. § 6402(a), the statute allowing the IRS to give tax refunds, to mean that "*All* refunds made by the Secretary under 6402(a) are paid to the person who made the overpayment." *Sorenson v. Sec'y of the Treasury of the United States*, 475 U.S. 851, 860, 106 S. Ct. 1600, 1607 (1986) (emphasis in original) (internal quotation marks omitted). In short, Laird has standing.

---

[5] The name "Troy Laird" may be a clerical error, given that Mr. Barnes refers to his client as "Tony Laird" in correspondence, and that the Plaintiff's name on the case caption is "Anthony Laird." In any event, none of the checks list the company as the remitter.

7

## II.  The Statute of Limitations

The Government contends that the Internal Revenue Code's statute of limitations bars Laird from recovering any amount beyond $46,500.  The Government is correct.

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.  A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms."  *United States v. Dalm*, 494 U.S. 596, 608, 110 S. Ct. 1361, 1368 (1990) (internal quotation marks and citations omitted).

Under the Internal Revenue Code's statute of limitations, a "claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C.§ 6511(a); *see Dalm*, 494 U.S. at 609, 110 S. Ct. at 1368.

Here, the company's relevant tax return was filed on September 11, 2006.  In September 2015, Laird and the company each filed an administrative claim seeking a refund.  More than three years passed between the time the return was filed and the time Laird sought a refund.  Laird may not recover via the three-year provision.

If a refund claim is not filed within the three-year period, then "the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim."  26 U.S.C. § 6511(b)(2)(B).  Consequently, Laird may only recover payments made between September 2013 and September 2015.  The company's Account Transcript from the IRS shows that the only payments made within this time

period were the three checks totaling $46,500 in 2014. Because no other payments were made within the limitations period, any recovery beyond $46,500 is barred by the statute of limitations. The court lacks jurisdiction over the remaining $5,538.12 of Laird's $52,038.12 claim.[6]

It should also be noted that the $145,000 Trust Fund Recovery Penalty payment is not part of Laird's refund claim. It is true that Laird made that payment in January 2015, within the limitations period. However, that payment does not come within the definition of Laird's claim. Laird's complaint asserts that the $52,038.12 represents the "total of all credits for tax period ending June 30, 2006 applied to the non-trust fund portion of employment tax liabilities of the taxpayer for other tax periods." The Account Transcript for the company's tax period ending June 30, 2006, which is attached to the amended complaint, does not show the $145,000 payment, so it was not applied to that tax period. Moreover, the IRS never proposed to assess a Trust Fund Recovery Penalty against Laird for the second quarter of 2006. Rather, it proposed (and Laird paid) the penalty for various quarters from the third quarter of 2006 to 2010. Accordingly, Laird's claim does not encompass the funds from the Trust Fund Recovery Penalty.

## III. The Refund Claim

On the merits, Laird contends that the IRS owes him a refund because it disregarded the instructions to apply his $46,500 payment only to the company's trust fund liabilities. The Government responds that the IRS merely exercised its right of setoff by reallocating the $46,500 overpayment from the second quarter of 2006 to the non-trust fund portions of the company's taxes for other quarters in order to partially satisfy the company's other debts. And indeed, the IRS could not use those funds to pay trust fund liability

---

[6] $52,038.12 - $46,500 = $5,538.12.

because Laird's Trust Fund Recovery Penalty had already satisfied that debt. What this case boils down to is whether, under these particular facts, Laird's written instructions or the IRS's right of setoff prevails.

Generally, the IRS must follow a taxpayer's written instructions as to how a payment should be applied. This rule, called the voluntary partial payment rule, predates 2002 but is now memorialized as Internal Revenue Procedure 2002-26. It states:

> If additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer . . . at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written instructions as to the application of the payment, the Service will apply the payment in accordance with those directions.

Rev. Proc. 2002-26 §3.01; *see Wood v. United States*, 808 F.2d 411, 416 (5th Cir. 1987) ("It is well established that in the absence of a direction by the taxpayer the IRS can apply a payment to any outstanding tax liability of the taxpayer. . . . But if a taxpayer directs that a payment be applied in a certain manner, the IRS must abide by the taxpayer's direction.").

But the IRS also has a statutory right of setoff. "In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person." 26 U.S.C. § 6402(a)(emphasis added). Thus, "the IRS' right to setoff derives from Section 6402(a) of the Internal Revenue Code . . . which provides that generally a party is only entitled to a tax refund of the amount which exceeds any outstanding liabilities." *In re Davis*, 889 F.2d 658, 661 (5th Cir. 1989); *see also Estate of Bender v. C.I.R.*, 827 F.2d 884, 888 (3d Cir. 1987) ("Both reason and logic persuade us that before an individual may claim that

he has an income tax refund asset he must demonstrate that he does not owe more money to the IRS than the IRS owes him."). In other words, a taxpayer is not necessarily entitled to a refund simply because he has made an overpayment. If a taxpayer has overpaid one part of his taxes while remaining liable for other taxes, he may only receive a refund if, in total, the IRS owes him more money than he owes the IRS.

According to the IRS, the voluntary payment rule yields to its setoff right in the case of taxpayer overpayments. In *United States v. Ryan*, the Government argued that:

> under the voluntary payment rule, when a taxpayer who has outstanding tax liabilities voluntarily makes a payment, the IRS will usually honor a taxpayer's request about how to apply that payment. However, the government distinguishes *partial payments* of delinquent tax debts, to which no statute applies and to which the IRS applies its voluntary payment rule, from *overpayments*, which are governed by the clear rule of § 6402(a) and implementing regulations. Stating the government's position another way: the voluntary payment rule applies when a taxpayer voluntarily makes a partial payment on his tax liabilities and designates the liability which should be credited at the time the payment is made; on the other hand, § 6402(a), and not the voluntary payment rule, applies to money that comes into the hands of the government because of overpayment of a particular liability.

64 F.3d 1516, 1522 (11th Cir. 1995) (emphasis in original). The Eleventh Circuit ultimately adopted the Government's argument. *Id.* at 1523. It explained that

> because both parties agree that the statute, § 6402(a), plainly gives the IRS the discretion to apply overpayments to any tax liability, the issue in this case is a narrow one: whether the IRS, despite this statutory grant of authority, has administratively decided to restrict its discretion and abide by the voluntary payment rule when a taxpayer makes an overpayment. Whatever may be the situation with tax payments other than overpayments . . . we hold

> that the government has convincingly demonstrated that the IRS has not administratively restricted its authority to decide how to allocate overpayments. In other words, the IRS has not extended its voluntary payment rule to overpayments.

*Id.* at 1523; *see also Bryant v. C.I.R.*, 97 T.C.M. (CCH) 1384, *4 (2009) ("[S]ection 6402(a) and the regulations promulgated thereunder demonstrate that a taxpayer's right to designate the application of his voluntary payment does not extend to an overpayment reported on a return."); *United States v. Lavi,* No. 02-CV-6299, 2004 WL 2482323, at *7 (E.D.N.Y. 2004) ("[T]he voluntary payment rule applies when a taxpayer voluntarily makes a partial payment on his tax liabilities and designates at the time of payment the liability that is to be credited; conversely, Section 6402(a) and not the voluntary payment rule, applies to money that comes into the hands of the government because of overpayment of a particular liability.") (citing *Ryan*, 64 F.3d at 1522–23). These courts have held that the IRS is not bound by a taxpayer's written instructions in the event of an overpayment, in contrast to a voluntary partial payment. Pursuant to *Ryan,* the fact that IRS disregarded "the taxpayer's" written instructions in deciding how the refund should be applied, a decision arguably contrary to Rev. Proc. 2002-26, Sec. 3.01, would not be improper.

Although we pay close attention to sister circuits' authorities, we need not reach the application of *Ryan* at this point because an important fact may exist that would render both § 6402(a) and *Ryan* inapplicable: Laird may have used his own funds, not those of the company, to pay taxes on behalf of Laird Electric, a separate corporate entity. Recall what § 6402(a) says. IRS "may credit the amount of such overpayment . . . *against any liability* in respect of an internal revenue tax *on the part of the person who made the overpayment.*" 26 U.S.C. § 6402(a) (emphasis added). That language does not permit the IRS

to offset one person's tax debt with another person's payments. Rather, the IRS may offset the tax liabilities of the person who made the overpayment. And indeed, *Ryan* was a case about individuals who had overpaid their own income taxes and asked the IRS to apply their overpayment to the previous tax year; no separate entity was involved. *Ryan*, 64 F.3d at 1517.

Laird's complaint and accompanying checks, as noted above, may be read to state that Laird, the remitter of the cashier's checks, used his own money to pay the corporation's relevant trust fund taxes. If further factual development corroborates that Laird's personal resources covered those checks, then *Ryan* is distinguishable and under the plain language of § 6402(a), IRS would owe Laird $46,500. Unfortunately, we cannot be sure whether Laird or his company underwrote those checks. Mr. Barnes, at oral argument on appeal, claimed not to know whose funds were paid to the bank for the cashier's checks. Further, throughout the amended complaint, both Laird, and occasionally Laird Electric, are referred to as the "taxpayer."[7] In short, we cannot review Laird's claim without knowing whether he or the company paid the taxes for which refund is now claimed.[8] The district court will have to sort this out on remand.

---

[7] Laird's amended complaint specifically purports to identify him as "taxpayer," Introduction, and Laird Electric Company as "Corporation," par. 7. Later, the terminology becomes confused. Compare, for instance, "When the taxpayer's representative contacted the IRS with respect to this additional assessment…." Par. 39, and "Further, the IRS erroneously assessed the taxpayer additional tax…" Par. 51, with "Later, the taxpayer paid the trust fund portion owed for all tax periods at issue beyond June 30, 2006." Par. 53.

[8] To be clear, nothing in our analysis affects or draws in question Laird's personal payment of more than $145,000 wherewith he accepted responsibility for trust fund taxes. That payment plays no part in our analysis, nor is it material on remand.

No. 18-60735

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **VACATED** in part, **DISMISSED** in part for lack of jurisdiction, and **REMANDED** for further proceedings consistent with this opinion.