131 T.C. No. 8

UNITED STATES TAX COURT

ESTATE OF LEONARD ROSEN, DECEASED, BERNICE SIEGEL,
SPECIAL ADMINISTRATOR, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 18844-04.                    Filed October 20, 2008.


        On June 4, 2001, D's estate (E) filed D's 2000
Federal income tax return and paid the liability
reported on that return.  On July 7, 2001, E filed D's
Federal estate tax return and paid the liability
reported on that return.  On Aug. 13, 2001, R
mistakenly assessed only part of the liability reported
on the income tax return and refunded to E the portion
of the income tax payment exceeding that assessment.
On or about Aug. 24, 2001, E voided the refund check
and returned the check to R with a letter stating that
the refund was apparently made in error.  On Sept. 3,
2001, R assessed the tax reported on the estate tax
return and assessed as to that return additions to tax
and interest; these assessments totaled more than the
liability reported on the estate tax return.  Later in
Sept. 2001, after receiving the voided check, R
recorded the tax reflected in the voided check as a
payment of D's 2000 income tax, thus then showing in
R's records that D had overpaid his 2000 income tax.

In June 2002, R credited to D's unpaid assessed estate tax liability the income tax overpayment shown in R's records. Later, during this proceeding, R observed that R had not assessed some of the liability reported on D's income tax return and that this amount corresponded to the amount of the overpayment credited to D's estate tax. In Nov. 2005, after the 3-year period of limitations had expired as to D's 2000 income tax, R recharacterized as an income tax payment the amount of the overpayment credited in June 2002 to E's estate tax, thus decreasing E's estate tax payments by a similar amount.

Held: The disputed funds represent a payment of D's Federal estate tax and enter into the calculation of the overpayment of that tax. R was not entitled in Nov. 2005 to recharacterize the disputed funds as R did, given that the 3-year period of limitations for assessment as to D's 2000 Federal income tax had expired before the recharacterization.

Michael R. Morris, for petitioner.

Louis B. Jack, for respondent.

OPINION

LARO, Judge: This case is before the Court for decision without trial. See Rule 122.[1] The Estate of Leonard Rosen, Deceased (estate), Bernice Siegel, Special Administrator, petitioned the Court to redetermine respondent's determination of a $39,956 deficiency in Federal estate tax and a $28,968 addition thereto under section 6651(f) (or alternatively section

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded.

6651(a)(1)). The parties agree that the estate is entitled to receive an overpayment of Federal estate tax and ask the Court to determine that overpayment. Petitioner asserts that the estate has overpaid its estate tax by $664,088 (without consideration of additional deductions for interest and legal fees which the parties have stipulated the estate may be entitled to, but the amounts of which require a computation under Rule 155). Respondent asserts that the estate has overpaid its estate tax by $396,543 (without consideration of the just-stated additional deductions for interest and legal fees).

Our determination of the amount of estate tax the estate overpaid requires that we decide a single issue. Specifically, we decide whether the estate in calculating its estate tax overpayment may treat as a payment of Federal estate tax, $499,757 that the estate initially tendered to respondent as a payment of the 2000 Federal income tax of Leonard Rosen (decedent). Upon receipt of those funds, respondent recorded the funds as a payment of decedent's 2000 income tax but subsequently applied the funds as an overpayment of decedent's 2000 income tax to the estate's Federal estate tax. Later, during this proceeding, after respondent observed that he had not assessed "interest" under section 1291(c)(1)(B) reported on decedent's 2000 income tax return, respondent unilaterally recharacterized the funds as a payment of decedent's 2000 income tax purportedly

to carry out the original intent of the estate in tendering the funds to respondent that the funds be a payment of decedent's 2000 income tax. We hold that the funds now represent a payment of the estate's Federal estate tax and are taken into account in calculating the estate's overpayment of that tax.

## Background

Our recitations of fact are based upon the parties' stipulations of fact and the exhibits submitted therewith. We incorporate those stipulations herein by this reference. Decedent resided in California when he died on February 20, 2000. When the petition commencing this case was filed, the special administrator, Bernice Siegel, resided in California.

When he died, decedent's primary asset was a 100-percent interest in a Panamanian corporation named Lantana Corp., Ltd. (Lantana). Lantana owned two Bahamian bank accounts worth approximately $6.5 million. Lantana's address was a post office box in the Bahamas.

On June 4, 2001, the estate filed decedent's 2000 (final) Form 1040, U.S. Individual Income Tax Return (decedent's final income tax return), with respondent's service center in Fresno, California (Fresno Service Center). That return reported that decedent had received an excess distribution during 2000.[2] The

---

[2] Sec. 1291(a) provides that a taxpayer in receipt of an "excess distribution" must increase the taxpayer's income tax
(continued...)

estate included as part of decedent's final income tax return a

Form 8621, Return by a Shareholder of a Passive Foreign

Investment Company or Qualifying Electing Fund, reporting that

decedent owed section 1291 tax of $562,633 and section 1291

interest of $498,386.[3]  The estate also included with decedent's

final income tax return a check in the amount of $1,073,654,

reportedly as payment of the following items:

| Items | Amount |
|---|---|
| Sec. 1291 tax | $562,633 |
| Sec. 1291 interest | 498,386 |
| Failure to pay estimated income tax addition to tax | 44 |
| Failure to pay timely addition to tax | 5,620 |
| Sec. 6601 interest | 7,564 |
| Credit for the elderly | (593) |
| Total | 1,073,654 |

Decedent's final income tax return reported the $562,633 as

section 1291 tax and included that amount in the $562,040

reported as decedent's total tax for 2000 (i.e., the $562,633

less the $593 credit for the elderly).  Decedent reported the

---

[2](...continued)
liability by a "deferred tax amount".  Sec. 1291(c)(1)(A) and (B)
generally defines the term "deferred tax amount" to mean the sum
of the "aggregate increases in taxes" plus the "aggregate amount
of interest * * * on such increases in tax".  See also sec.
1291(b) (defining the term "excess distribution").

[3] We use the terms "section 1291 tax" and "section 1291
interest" to refer respectively to the "aggregate increases in
taxes" described in sec. 1291(c)(1)(A) and the "aggregate amount
of interest * * * on such increases in tax" described in sec.
1291(c)(1)(B).

section 1291 interest of $498,386 at the bottom of page 1 by typing thereat: "SECT 1291 INTEREST $498,386".[4]  On the bottom of page 2, beneath the block stating that it is to be completed by paid preparers only, was the following information:

          ** INTEREST NOT INCLUDED          7,564.

          ** PENALTY NOT INCLUDED           5,620.

                    **** TOTAL DUE      1,073,654.

Decedent's final income tax return was never audited.

     The estate's estate tax return was filed with respondent on July 7, 2001.  As part of that return, the estate claimed a deduction of $1,067,990 for taxes paid on decedent's final income tax return (check amount of $1,073,654 less the sum of the additions to tax of $44 and $5,620).  Respondent did not disallow any part of that deduction as part of the notice of deficiency. The estate reported on its estate tax return that its estate tax liability totaled $2,068,548 (estate tax of $1,963,261 plus interest of $105,287) and included with the return a check for $2,068,548.

     On August 13, 2001, the Fresno Service Center processed the $1,073,654 payment made with decedent's final income tax return.

---

[4] For purposes of calculating sec. 1291 interest, line 11f of the 2000 Form 8621 directs taxpayers to "See instructions". The instructions state that individuals shall "enter the interest at the bottom right margin of Form 1040, page 1, and label it as 'Sec. 1291 interest'  Include this amount in your check or money order payable to the United States Treasury".

In connection therewith, the Fresno Service Center assessed the reported total income tax of $562,040, the reported failure to pay estimated income tax addition to tax of $44, the reported failure to pay timely addition to tax of $5,620, and section 6601 interest of $6,193 (reflecting a total assessment of $573,897), and refunded the $499,757 balance[5] as an overpayment of decedent's 2000 income tax (plus interest of $1,316) to the estate through a check payable in the amount of $501,073. On August 17, 2001, after the estate had received the refund check, an accountant for the estate notified respondent that the estate believed that respondent in issuing the check had mistakenly not taken into account the section 1291 interest. Approximately 1 week later, the estate voided the refund check and sent it back to respondent with a letter stating that the funds reflected in that check were apparently attributable to section 1291 interest connected with decedent's final income tax return.[6]

On September 3, 2001, respondent assessed the $1,963,261 shown as tax on the estate tax return and assessed as to that return additions to tax totaling $520,264 and interest of

---

[5] Petitioner's papers sometimes incorrectly refer to this amount as $497,757.

[6] The letter states in relevant part: "Enclosed please find a VOID IRS refund check, Check no. 2303-84095190, in the amount of $501,073.09. We believe the deviation [sic] is from the Section 1291 interest. A copy of the 2000 Form 1040 is also enclosed for your reference."

$138,757.  Later in September 2001, after receiving the voided check, the Fresno Service Center recorded $499,757 of the funds (i.e., the total amount of the check less the interest of $1,316) as an August 13, 2001, payment of decedent's 2000 Federal income tax, thus showing in respondent's records that decedent had overpaid his 2000 income tax by a similar amount.[7]  In June 2002, the Fresno Service Center applied the just-referenced $499,757 overpayment as a payment made on June 4, 2001, with respect to the estate's estate tax liability.  Beforehand, respondent's records showed an estate tax liability greater than $499,757; the amount showed as owing consisted of the failure to file and pay additions to tax and accrued interest thereon.  Immediately after this application, respondent's records reported that decedent owed nothing as to his 2000 Federal income tax.

In or about March 2003, the estate learned from respondent that $499,757 of the funds remitted with decedent's 2000 income tax return had been applied to the estate's estate tax liability. Approximately 4 months later, in July 2003, the Philadelphia Service Center reversed the June 2002 transaction so that immediately afterwards the $499,757 was recorded by respondent as a June 4, 2001, payment of decedent's 2000 income tax rather than

---

[7] Beforehand, on Sept. 12, 2001, the Fresno Service Center notified the estate that it had received the refund check.  The estate received no further correspondence from the Fresno Service Center concerning decedent's 2000 income tax.

of estate tax.[8]  After the July 2003 reversal, respondent's records again reported that decedent had overpaid his 2000 Federal income tax by $499,757.  In March 2004, the Fresno Service Center reapplied to the estate's unpaid assessed estate tax liability $498,386 of the $499,757 shown in respondent's records as an overpayment of decedent's 2000 income tax, effective as of June 4, 2001, and removed the remaining $1,371 ($499,757 - $498,386) from decedent's 2000 income tax account. Beforehand, respondent's records reported that the estate owed more than $498,386 in estate tax; the amount showed as owing consisted of the failure to file and pay additions to tax and accrued interest thereon.  After the transfer, respondent's records reported that decedent owed nothing in 2000 income tax.

On July 7, 2004, respondent issued to the estate the notice of deficiency underlying this action.  The parties ultimately settled all issues raised in that notice.  In finalizing the settlement, one of respondent's Appeals officers observed that the $498,386 reported on decedent's final income tax return as section 1291 interest had not been assessed and that a corresponding amount of the funds included in the check tendered with the return was recorded as a payment of the estate's estate tax.  In November 2005, more than 4 years after the estate filed

---

[8] The record does not reveal how the Philadelphia Service Center became involved in this case.

decedent's final income tax return, the Fresno Service Center added $498,386 to decedent's 2000 income tax payments and subtracted $499,757 from the estate's estate tax payments. The service center did so purportedly to reflect the estate's intent in tendering the latter funds that they be a payment of decedent's 2000 income tax. Immediately after the November 2005 transaction, respondent's records reported that the estate owed more than $499,757 in estate tax and that decedent had overpaid his 2000 income tax by $498,386. As of December 19, 2005, the Fresno Service Center assessed $498,386 of "restricted interest" as to decedent's 2000 Federal income tax. The term "restricted interest" connotes interest that cannot be calculated by respondent's computer system.

## Discussion

We decide whether the estate in calculating its overpayment in estate tax may treat the disputed funds of $499,757 as a payment of Federal estate tax. Respondent argues at the outset that the Court lacks jurisdiction to decide this issue because, respondent states, this case arises from an estate tax deficiency and any decision as to the characterization of the disputed funds as other than decedent's 2000 Federal income tax requires that we decide whether decedent overpaid his 2000 Federal income tax. For three reasons, we disagree with respondent's assertion that we lack jurisdiction over this issue.

First, in a case such as this, where petitioner is challenging whether estate tax was overpaid, we have jurisdiction to determine the amount of any such overpayment. See sec. 6512(b)(1). In making that determination, we must decide whether the estate made "any payment [of estate tax] in excess of that which is properly due." Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947); see also United States v. Dalm, 494 U.S. 596, 610 n.6 (1990) (stating that "The commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all."). Given that the disputed funds, if considered a payment of estate tax, would enter into the calculation of whether the estate has paid more estate tax than is properly due, we must by necessity decide whether those funds are a payment of estate tax.

Second, contrary to respondent's assertion, we need not and do not determine the amount of decedent's 2000 Federal income tax for which the estate is liable, or whether decedent's 2000 Federal income tax was overpaid. We focus simply on whether the disputed funds are a payment of estate tax. While our decision may tangentially affect the amount of the payments that decedent made as to his 2000 Federal income tax, we do not determine the status of that tax or whether it has been paid in full.

Third, we have considered sua sponte whether we lack jurisdiction on account of section 6512(b)(4). Although neither

party claims that we lack jurisdiction under that section, jurisdiction is fundamental and must be considered by the Court in the first instance whenever our jurisdiction is subject to reasonable doubt. See, e.g., Stewart v. Commissioner, 127 T.C. 109, 112 (2006); Urbano v. Commissioner, 122 T.C. 384, 389 (2004). Pursuant to section 6512(b)(4), the Court lacks jurisdiction in a deficiency case such as this to review a credit made by the Commissioner under section 6402(a).[9] See also Ryals v. Commissioner, 127 T.C. 178, 182 (2006); Savage v. Commissioner, 112 T.C. 46 (1999). Section 6512(b)(4) does not apply to this case because we do not find in the limited record before us that respondent, in most recently recharacterizing the disputed funds as the payment of income tax rather than estate tax, was crediting an overpayment pursuant to section 6402.[10] Nor does section 6512(b)(4) deprive the Court of jurisdiction in essence to review the reversal of the overpayment credit made by respondent in the first place; i.e., respondent had credited to the estate's estate tax the disputed funds shown in respondent's records as an overpayment of decedent's 2000 Federal income tax.

_____

[9] Sec. 6512(b)(4) provides: "The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402."

[10] Nor does respondent claim that respondent, in ultimately recharacterizing the funds as a payment of income tax rather than of estate tax, was crediting an overpayment pursuant to sec. 6402.

Section 6512(b)(4) applies to a "credit or reduction made by the Secretary under section 6402" and the "reversal" at hand was not made by the Commissioner under section 6402.

As to the substantive issue at hand, respondent argues that his current treatment of the disputed funds as a payment of decedent's 2000 income tax carries out the estate's intent in tendering those funds to him in the first place. We disagree. The expressed intent of the estate was that respondent treat the funds as a payment of decedent's 2000 income tax upon receipt of the funds. Respondent carried out that intent when he initially recorded the funds as a payment of decedent's 2000 income tax. Respondent asserts that he "twice failed to credit the decedent's income tax payment in a manner consistent with * * * [the estate's] designation" and that the estate now wants to redesignate the funds as estate tax. We disagree on both counts. Consistent with the estate's designation of the disputed funds as income tax, respondent recorded those funds upon their receipt as an income tax payment made by decedent for 2000. Only after that recording did respondent credit the estate's estate tax with the amount shown in respondent's records as an overpayment of 2000 income tax. See United States v. Ryan, 64 F.3d 1516, 1523-1524 (11th Cir. 1995). Nor is the estate now asking for a redesignation of the disputed funds. The estate simply asks that it get credit for all payments that it made as to its estate tax,

whether the payments were made directly by the estate or indirectly through any overpayment that respondent credited to its estate tax.

In his posttrial brief, respondent discusses <u>Lewis v. Reynolds</u>, 284 U.S. 281 (1932), and its progeny, including <u>Bachner v. Commissioner</u>, 109 T.C. 125 (1997), affd. without published opinion 172 F.3d 859 (3d Cir. 1998). As noted by the Court in <u>Bachner</u>, the principles of <u>Lewis v. Reynolds</u>, <u>supra</u>, require that a taxpayer's claim for refund be reduced by the amount of the correct tax liability for the taxable year, regardless of the fact that the Commissioner can no longer assess a deficiency for the taxable year. See <u>Bachner v. Commissioner</u>, <u>supra</u> at 130. Respondent observes that his records currently list the disputed funds as a payment of decedent's 2000 Federal income tax and asserts that the estate is precluded by the referenced principles from now applying any of the funds to the estate's estate tax as a refund for lack of an income tax overpayment for 2000. Respondent's observation and assertion are misplaced. Contrary to respondent's desired current characterization of the disputed funds as a payment of decedent's 2000 Federal income tax, we find and conclude as discussed above that the disputed funds currently represent a payment of the estate's Federal estate tax. Thus, as also discussed above, the question of whether decedent may or may not have overpaid his 2000 Federal income tax (and any related

application of the principles of <u>Lewis v. Reynolds</u>, <u>supra</u>), is not before us.

Nor are our finding and conclusion altered by the fact that respondent's records currently list the disputed funds as a payment of decedent's 2000 Federal income tax.  Respondent unilaterally changed his records to reflect as much after the expiration of the 3-year period of limitations for assessment as to decedent's 2000 Federal income tax.  Given the timing of that change, i.e., after the referenced 3-year period of limitations had expired, we consider the change to have been made too late to have any effect.  Although not mentioned by either party, we are mindful of the case of <u>Commissioner v. Newport Indus., Inc.</u>, 121 F.2d 655 (7th Cir. 1941), revg. 40 B.T.A. 978 (1939).  There, the court allowed the Commissioner to correct an erroneous credit of an overpayment where the period of limitations remained open as to an earlier year to which the credit had been erroneously credited.  See <u>id.</u> at 656-657.  The court emphasized, however, that the Commissioner could properly make such a correction because the limitations period remained open for the earlier year.  See <u>id.</u> at 656.  The court noted that "Good sense commands that the correction of errors be barred after the expiration of the period of limitations relative to assessments and collections."  <u>Id.</u> at 657.  Where, as here, respondent concedes (in his posttrial brief) that the applicable 3-year period of

limitations for assessment expired before he most recently recharacterized the disputed funds as a payment of decedent's 2000 Federal income tax, respondent is (and was as of the time of the recharacterization) bound by his previous recording of the disputed funds as a credit to the estate's estate tax and is (and was as of the time of the recharacterization) precluded from undoing that credit to change his recorded characterization of the disputed funds to that of a payment of decedent's 2000 income tax.

We hold that the disputed funds now represent a payment of the estate's Federal estate tax and are taken into account in calculating any overpayment of that tax.[11] We have considered all arguments for a contrary holding (including respondent's argument that the duty of consistency applies to treat the disputed funds as a payment of income tax), and we reject all arguments not discussed herein as without merit. To reflect the aforementioned additional deductions for interest and legal fees,

Decision will be entered

under Rule 155.

---

[11] The estate's estate tax return claims a deduction of $1,067,990 for taxes paid on decedent's final income tax return. Of that amount, we find that $499,757 was credited to the estate as a payment of estate tax. The parties' computation(s) under Rule 155 should adjust the deduction so that the estate's deduction for income taxes paid does not include the $499,757.